# BARNHART v. EDWARDS et al.

## Sac. No. 150; December 28, 1896.

47 Pac. 251.

**Mortgage—Future Advances—Parol Evidence.**—Where a conveyance was made as security for certain money advanced, parol evidence is inadmissible to show that, by agreement with the attorney of the grantor, the effect of the instrument was changed so as to also secure future advances.

**Mortgages—Future Advances—Taxes.**—An instrument by which land was conveyed to secure advances, which provided for the repayment of all taxes upon the lands conveyed, did not invalidate the agreement under constitution, article 13, section 5, providing that contracts for payment of taxes upon the "money loaned" should be void.

**Mortgage — Foreclosure — Pleading.**—An Instrument Conveyed certain lands to secure, among other matters, a loan of $2,500, secured by a pledge of certain wheat. Held, in an action to foreclose the lien, that, as the note was expressly named as one of the debts secured, it was incumbent on defendant, if he would avoid liability therefor, to plead the facts by virtue of which the land had been exonerated from this liability.

**Appeal.—An Assignment That the Court Erred** in finding that a certain sum was due from defendant to plaintiff is not a specification of the "particulars" in which the evidence is insufficient to sustain the finding.

**Pledge — Attachment — Conversion.**—Where Wheat Pledged is taken from the possession of the pledgee in attachment against the pledgor, and the litigation in relation thereto is conducted by the attorneys of the pledgor, the pledgee cannot be charged with conversion when the attachment is sustained.

**Mortgagee in Possession—Extent of Liability.**—Certain Land was transferred to plaintiff to secure a loan. At the time of the transfer, it was under a lease which the lessee subsequently assigned to plaintiff. Held, by thus getting possession, plaintiff became the mortgagee in possession, and was liable to defendants only for the income and profits received from the land.

APPEAL from Superior Court, San Joaquin County; Ansel Smith, Judge.

Action by Barnhart against J. T. Davis, Edwards' administrator, and others. Judgment for plaintiff. Defendant Davis appeals. Modified.

P. J. Hazen and Nicol & Orr for appellant; Jas. A. Louttit and Minor & Ashley for respondent.

HARRISON, J.—E. C. Vancil, the intestate of the defendant Edwards, executed to the plaintiff, April 23, 1879, a conveyance of certain lands in the county of San Joaquin, as a security for the payment to him of certain sums of money. The transaction was evidenced by a conveyance absolute in form, and a separate defeasance in the nature of an agreement for the sale of said land to the grantor for the considerations therein named. These considerations consisted, however, entirely of moneys paid out or expended by the plaintiff, and the conveyance of the lands to the plaintiff was intended only as a security for their repayment. The present action is in the nature of a foreclosure, and was brought to obtain judgment against the estate of the grantor for the amount of such payments alleged to be still unpaid, and for the sale of the land in satisfaction thereof. The defendant Mordecai A. Vancil is the son of E. C. Vancil, but is also known by the name of John T. Davis, and under that name has appealed from the judgment rendered in favor of the plaintiff, and also from an order denying his motion for a new trial. The appeal from the judgment was heretofore dismissed upon the motion of the respondent (111 Cal. 428, 44 Pac. 160), leaving only the appeal from the order to be considered. The grounds upon which the appellant urges a reversal of the order are that the court erred in holding that certain advances made to him by the plaintiff were secured by the mortgage, and also that certain items were chargeable against the plaintiff in his account with the mortgagee, and should have been deducted from the advances made by him for which the security was given.

1. The advances of the plaintiff which the appellant contends are not secured by the mortgage consist of four items, viz.: The sum of $100, paid to Hughes, April 25, 1879, at the request of Davis, upon the claim that it was owed by him; $250, paid to Davis, June 7, 1880, for which he gave the plaintiff the note of E. C. Vancil; $100, paid to Davis on his note, April 22, 1881; and $291.60, paid for a note of Davis, pur-

chased from Long, August 2, 1881. The sums of money for
whose repayment the security was given, as expressed in the
instrument of defeasance, are the following: The $2,300
named in the deed of conveyance as its consideration, and
which was used in paying certain debts against Davis in the
city of Stockton; a note for $2,500 that had been executed by
Davis to the plaintiff, and for which certain wheat had been
pledged as security; the costs and expenses, including attor-
neys' fees, incurred, and that might be incurred, in certain
litigation concerning said wheat; and all taxes that the plain-
tiff should pay on the land. It is very clear that any moneys
that might be thereafter paid to Davis, or advanced by the
plaintiff for his benefit, are not included in these items, or in
the purpose for which the security, as expressed in the instru-
ment, was given. It was, however, contended by the plaintiff
that there was a parol agreement between the parties to the
transaction that it should be security for such advances as the
plaintiff might thereafter make to Davis; and, against the
objection of defendants, evidence was introduced for the pur-
pose of sustaining this contention. That such evidence was
improperly admitted is evident from the provisions of section
2922 of the Civil Code, as well as from the general rule that
parties to a written instrument are presumed to have incor-
porated therein all the terms of their agreement, and that its
contents cannot be varied by parol. But, irrespective of this
rule, we are of the opinion that the plaintiff failed to show
that it was intended by the parties that these advances should
be secured by the instrument. Judge Budd, by whom the
instrument was drawn, testified that, as far as he could re-
member, he embodied therein all the agreements of the par-
ties as they were stated to him, and that the instruments were
read and explained to them before they were signed; and
he was unable to say that they gave him any instruction that
the mortgage was to be security for subsequent advances to
Davis. Davis himself was not present at Budd's office when
the instruments were drawn, and the plaintiff testified that he
helped dictate the deed and heard the agreement read after
it was prepared, and that no dissatisfaction was expressed;
and he does not testify that it was agreed, or that it was the
intention of the parties, that it should be a security for such
advances. The effect of the instrument could not be changed
by any subsequent parol declaration by Vancil's attorney of

the object of the instrument, or by the fact that the plaintiff made the advances upon his assurance that they should be thus secured.

2. The agreement for the repayment of all taxes upon the land described in the instrument of defeasance does not fall within the purview of section 5 of article 13 of the constitution. This provision does not invalidate an agreement by the mortgagor to pay the taxes upon the "land" mortgaged, but is limited to the taxes upon the "money loaned," or the "mortgage, deed of trust or other lien." By section 4 of the same article the mortgage is, for the purposes of assessment and taxation, to be treated as an interest in the property affected thereby, but only such value as there may be to the property so affected after deducting the value of the security is to be taxed to the owner of the property; the value of the security is to be assessed and taxed to its owner. It does not appear that any of the taxes paid by the plaintiff were upon the security, or other than those which were assessed upon the land after deducting the value of the security. If the defendant would claim the right to rely upon the provisions of section 5, it was incumbent upon him to show the existence of the circumstances under which the provision may be invoked.

3. At the time of the execution of the mortgage, the wheat that had been given in pledge for the payment of the $2,500 note had been attached in an action against Davis, and taken from the possession of the plaintiff. This wheat belonged to Vancil, and had been pledged by Davis to secure his own note; but by the instrument of April 23, 1879, Vancil ratified the transfer by Davis to the plaintiff. Davis also testified that all the business done by him since 1876 had been done by him under his name of Davis, but for Vancil; and it was also shown that, prior to the commencement of the present action, Vancil had conveyed to Davis all real and personal property owned by him in the state. Prior to the execution of the instruments of April 23, 1879, the plaintiff had brought a suit in replevin for the wheat, and judgment in that action was thereafter rendered against him, and the wheat sold in satisfaction of the judgment in the suit against Davis, wherein it had been attached. It is contended by the appellant that it was the duty of the plaintiff to defend the possession of the wheat, and that, by reason of his failure so to do, the court should have charged him with its conversion, or with its value

36

above the amount for which it was pledged to him. No such issue is, however, presented by the answers of the defendants; and it does not appear from the record that any proposition of this nature was submitted to the court below. In his assignments of errors of law, the plaintiff has specified that the court erred "in charging defendant and the premises mortgaged with the $2,500 secured by pledge of the wheat sued for in the case of Barnhart v. Fulkerth [93 Cal. 497, 29 Pac. 50]"; but, as this note was expressly named in the mortgage as one of the debts secured by it, it was incumbent upon the appellant, if he would avoid liability therefor, to set forth in his answer the facts by virtue of which he would claim that the land had been exonerated from this liability. The further assignment that the court erred in finding that the sum of $7,668.12 is due from the defendant to plaintiff cannot be considered as a specification of the "particulars" in which the evidence is insufficient to sustain this finding. But, disregarding the absence of an issue upon this proposition, we are of the opinion that it sufficiently appears from the record that the court did not err in refusing to charge the plaintiff with the loss of this wheat. After the plaintiff had introduced evidence of the amount yet unpaid upon the obligations for which the security was given, if the defendants would reduce this amount it was incumbent upon them, whether authorized by the pleadings or not, to offer evidence sufficient in law to be available for such reduction, from which the court could determine the amount by which the reduction should be made. The defendants offered in evidence the findings by the court in the replevin suit of the plaintiff, that, prior to the attachment in the suit against Davis, the sheriff had tendered to the plaintiff the sum of $2,600, and the plaintiff testified that he received $2,500 from that suit. In the findings herein, he is charged with $2,540, as of November 19, 1892; and it seems to be admitted in the briefs of counsel that this was for the tender made by the sheriff when the wheat was taken. There is, however, no evidence in the record of the value of the wheat, or of the amount for which it was sold by the sheriff. Unless it had some value beyond the amount for which the plaintiff has been charged in his account, there is nothing with which he should have been charged, and it was for the defendants to show that it had such value. The plaintiff cannot be charged with a conversion of

the wheat. It was taken from his possession by the arm of the law, and the record fails to show any affirmative act of his by which it was lost to the defendants. On the contrary, it appears that the litigation was conducted by the attorneys of Davis, who was the agent of Vancil, and acting for him, and by whose advice the plaintiff declined to take the money when tendered him. The defendant cannot invoke in this action, as conclusive upon the plaintiff, any findings made by the court in the replevin suit, in which he was not a party.

4. In October, 1876, the land conveyed to the plaintiff was leased to Hughes for the term of five years, at a rent of $1,500 per annum; and in September, 1880, Hughes made an assignment of this lease to the plaintiff. It is contended by the appellant that, by reason thereof, the plaintiff, as assignee of the land, became liable for the rent thereby reserved for the succeeding year, and should be charged with this amount in his account. As has been said with reference to the wheat transaction, this was a defense which must be affirmatively established by the defendants in order to render it available; and the record fails to show that the court erred in not holding that it was established. Although there was testimony that Hughes did, in fact, make an assignment of the lease to the plaintiff, yet at that date the plaintiff was the legal holder of the title to the land, and was, in fact, the landlord of Hughes; and the transaction was intended to be, and did in reality constitute, a surrender of the term by which the plaintiff, as landlord, was restored to the possession of the leased premises. The plaintiff testified in reference to this transaction: ''Hughes could not carry on the ranch. He throwed it up, and, at Davis' request, I carried it on. Hughes assigned the lease to me, and I took a new lease at the same time.'' By thus getting possession of the land, the plaintiff became a mortgagee in possession, and was liable to the defendants for only such income and profit as he may have received from the land. He testified that he never collected any rent from Hughes, and it appears that he has fully accounted for all the income and profits derived from the land during the time he was in possession.

The superior court is directed to deduct from the amount which it has found due to the plaintiff, as set out in finding 7, the items of $100, paid to Hughes, April 25, 1879; $250, paid to Davis, cash, on note June 7, 1880; $100 paid to Davis,

cash, on note April 22, 1881; and $291.60, paid for note to Long, August 2, 1881, with whatever interest has been allowed by reason of said items, and to make a corresponding amendment of its conclusions of law. The order denying a new trial will thereupon be affirmed. Judgment will then be entered in accordance with the findings as thus corrected.

We concur: Van Fleet, J.; McFarland, J.