[L. A. No. 3854. Department One.—September 19, 1917.]

R. J. PARKER, Respondent, v. THOMAS BEACH and EDWARD DOOL, Appellants.

STATUTE OF LIMITATIONS—CONTRACT TO REPURCHASE LAND.—Where selling agents of lands, as an inducement to a purchaser, executed individually a written contract by which they agreed to "repurchase" the property if the purchaser should become dissatisfied, the purchaser's action to recover on the breach of the latter contract is not founded in equity for specific performance, but in *assumpsit* for damages for breach of a written contract, and is properly brought within four years after the accrual of the cause of action by breach of the agreement to repurchase.

CONSIDERATION.—Where selling agents agreed to "repurchase" from a purchaser if he should become dissatisfied, the price paid by the purchaser was a sufficient consideration for the agreement of "repurchase."

APPEAL from a judgment of the Superior Court of Los Angeles County. W. M. Conley, Judge.

The facts are stated in the opinion of the court.

Flint, Gray & Barker, Gray, Barker & Bowen, and Bowen & Bailie, for Appellants.

Hunsaker & Britt, and Le Roy M. Edwards, for Respondent.

LAWLOR, J.—The appellants were partners in the real estate business, conducting it under the firm name of Beach & Dool. They dealt in government lands in Imperial Valley, California. On July 9, 1908, in consideration of the sum of four thousand dollars, they contracted to sell plaintiff 334.72 acres of desert land upon which one William De Legro had made entry on June 3, 1908, and, as part of the transaction and in order to close the deal, entered into a written contract with him. That contract, with the pertinent provisions italicized, reads in part as follows:

"Whereas, Thomas Beach and Edward Dool, a partnership, . . . are agents for William De Legro in the selling of certain government lands in Imperial Valley; and . . . are desirous of selling to R. J. Parker the *property belonging to*

*said William De Legro* [describing it] . . . ; and whereas, as a consideration for buying said property through the said agency of Beach & Dool, said Thomas Beach and Edward Dool, as an inducement to said R. J. Parker to buy said property, have agreed with said R. J. Parker that *should he be dissatisfied with the purchase* of the above described *property, they will buy back the same* for four thousand ($4,000) dollars at any time between February 1, 1909, and April 1st of the same year; together with seven per cent (7%) interest on said amount, including the cost of improvements placed on said property by the sanction of Beach & Dool:

"Now therefore . . . said parties of the second part [the appellants], for and in consideration of the aforesaid understanding and agreement, agree with said party of the first part [the plaintiff] that if [he] *is dissatisfied with said property* . . . , *or does not care to retain the ownership of the same,* that they and each of them will purchase said *property* of the said party of the first part any time between the first of February, 1909, and April 1st of the same year, and will pay [plaintiff] the sum of four thousand ($4,000) dollars, together with seven (7%) per cent interest per annum on said amount from the date of this agreement; [and] will further pay . . . any improvements placed upon said property hereinbefore described, to which they [defendants] have given their sanction in writing.

" . . . Should . . . [plaintiff] desire to avail himself of the privilege of having . . . [defendants] purchase said property from him between the dates hereinbefore specified, he will give [them] at least thirty (30) days' notice before said time expires of his intentions to ask them to purchase said property.

"(Dated) this 9th day of July, 1908.

"(Signed)    THOS. BEACH,<br>
"EDWARD DOOL,<br>
"R. J. PARKER."

Plaintiff paid appellants the four thousand dollars asked for the desert land entry in several installments. On July 15th he received from defendants a deed of an assignment duly executed by De Legro transferring to him all his right, title, and interest therein. But when plaintiff, about three days later, sought to file in the land office the affidavit required by federal law of assignees of original entrymen, he

was informed that the assignment was defective, as De Legro had filed the application upon land selected by the state as school land. An order to show cause why the entry should not be canceled was served on De Legro on July 21st. And appellants, on November 12, 1908, at plaintiff's suggestion, returned the check, amounting to $490, which he had given them in making the last payment on the purchase price of the land. With the check defendant Dool, one of the partners, sent a letter explaining: "We never felt like depositing it after we found the condition the filing was in on the land. I haven't had any talk with our attorneys regarding the condition of the case, but Mr. Beach saw Mr. Bowen a few days ago and he said he thought you would get the land alright, and if any lawyers in the city can get it I think they are the ones." But on February 20, 1909, plaintiff served notice on appellants stating that he was dissatisfied with the purchase of the property, and, in pursuance of the terms of their contract, desired them to buy it back for the sum agreed upon, less credit for the $490 which had been returned. At the same time plaintiff tendered appellants a grant, bargain, and sale deed describing the property received from De Legro. Defendants refused to perform the agreement or to refund any further part of the purchase price. It was not until October 7, 1909, that the entry originally made by De Legro was actually canceled. On June 7, 1912, plaintiff, renewing the tender of said grant deed, commenced this action for damages arising out of the breach of the contract. Judgment was recovered for $4,880.94 and costs. Defendants appeal therefrom and also from the orders denying their motions for nonsuit and a new trial.

Appellants do not dispute the sale of the land to the plaintiff, the making of the contract here sued upon, their receipt of four thousand dollars in payment of the purchase price, or the total failure of the title. It is not, in fact, of any apparent concern to them that they took plaintiff's money and that he received nothing of value in return. Yet they contend, with much vehemence of assertion extending throughout lengthy briefs, that they are not as matter of law liable for the damage caused him, nor in any wise bound to him under the contract. Their agreement may be fairly epitomized as follows: The contract made with plaintiff is a unilateral agreement merely giving him an option to require defendants

to buy land. The consideration named is solely for that purpose and for no other. Plaintiff, therefore, in consideration of having bought De Legro's land through them, received but their promise to enter into a second mutual agreement with him for the sale and purchase of a designated tract of land. This second obligation, which arose out of the exercise of the option by plaintiff, is not enforceable in that it lacks mutuality  As shown by the facts, to enforce it would require defendants to forfeit to plaintiff nearly five thousand dollars for something he does not own. In other words, the agreement lacks consideration, for in return for the "appropriation" of defendants' money plaintiff offers merely a deed which admittedly conveys no title at all. This is equivalent to giving nothing. "The plain language of this contract directly opposes the idea of such a penalty." But if the agreement was enforceable, it would avail plaintiff nothing, inasmuch as the law implies a warranty of title in every executory contract for the sale of land, and plaintiff not having a title to convey, would not be entitled to retain such moneys as he might receive therefor. Even assuming that the defective claim to the property held by plaintiff constitutes a legal consideration, specific performance of defendants' agreement to pay him four thousand dollars and interest therefor cannot be enforced, for the reason that such a consideration is grossly unjust, unreasonable, and inadequate. Nor can plaintiff give to the buyers a title free from reasonable doubt. "He must show an equitable, fair, mutual, and conscionable bargain founded upon an adequate consideration," and is unable to do so. Also the exercise of the option by plaintiff is based upon the performance by him of certain expressed conditions precedent, namely: "Should he be dissatisfied with the purchase of the . . . property," or "dissatisfied with said property," or "does not care to retain the ownership of the same." These conditions must be interpreted in the sense of referring to "the practical, business, and financial aspect of the trade, and not to its legal aspect." Particularly, it is to be noted that nothing is said about title. Hence, to substantially perform the conditions precedent it is essential that plaintiff first obtain the property, for what man can be dissatisfied with the purchase of, or decide not to retain the ownership of, what he has never received? Again, the contract provides that plaintiff give to defendants "at least thirty days' notice"

before April 1st of his intention to exercise the option to have defendants repurchase the property. Instead he gave notice forty days before that time and asked for immediate payment. Finally, as he has delayed bringing this action more than three years after the alleged expressed and positive repudiation of the contract, his claim is barred by inexcusable laches. From all this it must follow, so defendants argue, that plaintiff cannot hold them to their agreement.

We have thus given at some length the ingenious arguments advanced by appellants. Manifestly, plaintiff's action is not founded in equity for specific performance, but in *assumpsit* for damages for breach of a written contract. His action brought within four years was in time. The four thousand dollars he paid defendants was as much consideration for their agreement to repurchase the property they had sold him as for the receipt of the assignment of the entry made by De Legro. The notice given defendants that he had elected to accept the option created at once a bilateral contract, relating back to the time of the original sale, binding them to buy back of him on or before April 1st for the sum specified the "property" which they had sold him. (See *Schulte* v. *Boulevard Gardens Land Co.*, 164 Cal. 467, [Ann. Cas. 1914B, 1013, 44 L. R. A. (N. S.) 156, 129 Pac. 582].) It was precisely of such property that plaintiff, in the performance of his obligation to convey back what he had originally purchased, tendered a deed. That the title was thereafter declared void and the entry canceled by the government cannot alter the situation. Plaintiff's contract in no wise provides that he should perfect the title before defendants could be required to repurchase it. At the time of the tender, however, plaintiff still owned all the right, title, and interest in the desert land entry made by De Legro which he had received through the agency of the defendants. His deed to them was sufficient to reconvey such interest. Indeed, it might be held that as the contract refers to this property as "belonging to" De Legro, the truth of the recital must be deemed conclusive between the parties hereto. But irrespective of this the claim, such as it was, constituted salable property. It was conceivably of some value. And defendants, having in the deal culminating in the option contract sold it to plaintiff for four thousand dollars, are now in no position to contend, in defense of their failure to perform their agreement to repurchase it,

that it is not reasonably worth that sum. Even if the property is not worth the amount of the purchase price, the clear import of defendants' agreement is that they undertook to save plaintiff entirely harmless from any loss. To that end they agreed to repurchase the "property" they had sold him at the purchase price agreed, together with interest thereon in the event he did not care, for any reason, to retain its ownership, or should become dissatisfied with it. The contract in effect operates as an agreement, founded upon an adequate consideration, to guarantee plaintiff's title, notwithstanding he may have made an attempt, upon their suggestion, prior to the sale, to examine the record thereof. This is obviously the legal effect which the parties contemplated. Any other conclusion would manifestly work an injustice upon plaintiff and render the express terms of the contract nugatory. The contentions of appellants are without merit.

Judgment and orders affirmed.

Shaw, J., and Sloss, J., concurred.

Hearing in Bank denied.