[Civ. No. 1935.   Third Appellate District.—March 6, 1919.]

## PAUL F. FRATESSA, etc., Appellant, v. JOSEPH T. ROFFY et al., Respondents.

[1] WRITTEN INSTRUMENT—PROMISSORY NOTE OR GUARANTY—MONEY PAYABLE AS DIVIDENDS ON STOCK—MORTGAGE AS SECURITY—ASSIGNABILITY.—A writing, secured by a mortgage, in the form of a promise to pay one thousand five hundred dollars on or before two years from its date, with interest after maturity, and reciting that the payee has received from the maker certain shares of corporation stock, on which the maker guarantees dividends for two years of $750, provided that if in two years the dividends received amount to one thousand five hundred dollars, the note is to be canceled, and if they do not amount to $750 each year, the note shall be credited with the dividends, and the maker at maturity shall pay the balance, is assignable under sections 954 and 1458 of the Civil Code, regardless of whether it be considered a promissory note or a guaranty for the payment of money.

[2] CONTRACT OF INDEMNITY.—There is nothing in the language of the note to support the contention of the respondents that the written instrument constitutes a contract of indemnity against loss incident to the purchase of the stock and that no cause of action could arise therefrom without such loss by the holder of both the shares and the note, and that the note would have no validity where it had been assigned without an assignment of the shares also.

[3] ID.—NATURE OF INSTRUMENT.—The instrument in question was neither a guaranty nor a warranty, but a direct promise to pay money with a proviso for the payment of the amount, in whole or in part, out of the dividends received by the payee from the shares.

[4] MORTGAGE—SHARES OF STOCK.—Where the purchaser of land gave in payment shares of stock and a note, secured by a mortgage on the land with a proviso in the note for its cancellation if the payee received dividends from the shares equal to the amount of the note, such stock did not constitute additional security for the payment of the sum.

[5] ID.—FORECLOSURE—PARTIES.—A mortgagor who has disposed of his entire interest is an unnecessary party to the foreclosure of a mortgage.

[6] ID.—PLEADING.—In a foreclosure action a defense that the land has been exonerated from liability must be specially pleaded.

APPEAL from a judgment of the Superior Court of Sacramento County.  Peter J. Shields, Judge.  Reversed.

The facts are stated in the opinion of the court.

J. J. West, Paul F. Fratessa, Frank J. O'Brien and John W. Johnson for Appellant.

Arthur C. Huston and Thomas B. Leeper for Respondents.

BURNETT, J.—The action was brought by the assignee to foreclose a mortgage on land located in Sacramento County. The written obligation to secure which the mortgage was given was as follows:

"$1500.00                    Oakland, Calif. Oct 26th, 1907.

"On or before two years after date I promise to pay Geo. L. Woodford, or order, the sum of Fifteen Hundred Dollars, Gold Coin of the United States, with interest at the rate of one per cent per month from and after maturity, value received. If the principal and interest, or either shall not be paid when due then the whole of the said indebtedness shall be due and collectible at the option of the holder hereof. This note is upon the following conditions as to its payment prior to its maturity, or at maturity, that inasmuch as George L. Woodford has received from the maker hereof Two thousand shares of the capital stock of the Roffy Electrical Company upon which the maker hereof has and does guaranty a dividend each year for two years from January first 1908 of 750.00 dollars. If therefore in the said two years dividends have been received by Woodford on the said shares to the full sum of 1500.00 dollars then this note to be canceled. If the said dividends during said two years does not amount to 750.00 each year, then this note shall be credited with the dividends whatever they may be and the maker hereof shall then at maturity pay the balance.

"(Signed)   JOSEPH T. ROFFY."

On January 11, 1910, the said Woodford assigned the said note and mortgage to John H. Davidson, who commenced this action. He afterward assigned to Paul F. Fratessa, who has been substituted as plaintiff. The summons was not served on Roffy, he having disposed of his interest in the mortgaged land before this action was commenced. The complaint was answered by defendants, W. H. Leeper, G. D. Richey, and M. D. Butler, as administrator of the estate of James A. Butler, deceased, successors to Roffy's interest in the land mortgaged by

him to Woodford. They denied the execution of the assignment by Davidson to Fratessa and the nonpayment of the note.

[1] There seems to be some contention by respondents that there can be no assignment of the said written instrument—of the note and mortgage. However, there appears to be no question about that, since whether the said written instrument be considered a promissory note or a guaranty for the payment of money, it was plainly assignable by virtue of the provisions of sections 954 and 1458 of our Civil Code. There are many decisions, also, cited by appellant to the point that such obligations are assignable, but we deem it unnecessary to notice them.

[2] .We are entirely satisfied, also, that respondents are entirely in error in contending that the said written instrument constitutes a contract of indemnity against loss incident to the purchase of the shares of stock, and that no cause of action could arise therefrom without such loss by the holder of both the shares of stock and the note, and that the note would have no validity where it had been assigned without an assignment of the shares. There is nothing in the language of the note or of the mortgage to support this view. It is true that the maker used the word "guaranty," but it is not contended by respondents that there was any guaranty, as that term is understood by the authorities. It is claimed, however, by them that the maker "warranted" the payment of said dividends and that he intended to indemnify the payee against loss in consequence of any failure of said dividends. But, it must be understood that Roffy was a debtor and Woodford a creditor to the extent of one thousand five hundred dollars. In other words, that the former obligated himself to pay the latter the said sum, and, if the stock should pay any dividends, the amount was to be credited on the payment of said one thousand five hundred dollars. In other words, Woodford was to pay himself out of said dividends a portion or all of the said money which Roffy promised to pay, and, if no dividends were obtained, the amount of one thousand five hundred dollars was to be paid by said Roffy. There could, therefore, be no loss to Woodford, by reason of the nonpayment of dividends, since the amount was to be paid at any rate. The condition in reference to the application of any dividend that might be received to the payment of the claim was a favor to Roffy and could not be a detriment to Woodford. In fact, if the obligation be considered in any sense a "warranty," it amounted

to nothing more than a "warranty" that Roffy would pay his own debt either from the dividends or otherwise. **[3]** The truth is, that the instrument constitutes a direct promise of the maker to pay Woodford the sum of one thousand five hundred dollars, with the proviso that Woodford might pay himself this amount, or a portion thereof, out of any dividends that might be received from said stock.

When we consider the mortgage itself, we find it was given entirely and exclusively for the purpose of securing the payment of the debt of one thousand five hundred dollars, according to the terms of said promissory note. There is not a word in said mortgage in reference to any warranty or guaranty or indemnity.

The language of the mortgage, as far as necessary to quote, is as follows: "That the mortgagor mortgages to the mortgagee that certain parcel of land (describing it) as security for the payment to the said mortgagee of the sum of fifteen hundred ($1,500.00) dollars with interest thereon according to a certain promissory note of even date herewith, made by said mortgagor to the mortgagee herein."

**[4]** We may add that there is nothing in the evidence in the case to support the theory of respondents as to indemnity. The only testimony on the subject is that of Woodford, who declared that he sold the land to Roffy for two thousand shares of stock in a certain corporation and one thousand five hundred dollars in cash, but for the cash was substituted a note secured by the mortgage. In other words, it appears without conflict that Woodford became the owner of the stock and that the note and mortgage were given to secure the payment of the sum of one thousand five hundred dollars in cash.

The foregoing facts show, also, the fallacy of the position of respondents that the stock also constituted security for the payment of said sum. It follows that they are mistaken in the contention that the mortgage herein could not be foreclosed against respondents without taking into account said stock. There was no occasion for an election between two securities, since only one security was given to secure the payment of said one thousand five hundred dollars. Neither is there any ground for the contention that plaintiff is estopped from foreclosing the mortgage by reason of the fact that Woodford never notified respondents that the stock had failed to pay dividends and that he would hold their land under the mort-

gage. He was not required to give any such notice. The recordation of the mortgage was sufficient to notify all subsequent purchasers and encumbrancers that the land was held as security for the payment of said one thousand five hundred dollars. Nor was he required to begin an action to foreclose the lien, nor was there anything in the agreement between him and Roffy to preclude the assignment of said note and mortgage. If the respondents were led to believe that the stock had paid dividends to the amount of the note, it was their own fault. If they had any reason to so believe, they could and should have made inquiry of Woodford, and we cannot see anything inequitable in his conduct in respect to the nonpayment of said dividends. In fact *that*, as we have seen, was a matter of interest exclusively to himself and Roffy.

Another point made by respondents is, we think, more debatable. It grows out of the fact that the plaintiff failed to bring the maker of the note into court, it being claimed by respondents that plaintiff dismissed said action and waived deficiency against Roffy, the maker, and proceeded to trial over the objection of defendants. It is contended by respondents, and this view seems to have been adopted by the trial court, that by so doing he released the claims of the subsequent purchaser and junior mortgagee from the burden of the mortgage.

*Coyle* v. *Davis*, 20 Wis. 564, 568, involved the interest of a subsequent purchaser of a portion of the mortgaged premises, and it was held that the release of the mortgagor by the mortgagee from any personal liability discharged the land from the lien of the mortgage. The court said: "The plaintiff and her husband, by their purchase of a portion of the mortgaged premises, acquired the right to redeem from all the mortgages by paying the entire mortgage debt, and then to obtain satisfaction by the foreclosure and sale of the residue of the premises, and if they proved insufficient to resort to the personal liability of Jarman, the mortgagor. . . . She stands in the relation of a surety for Jarman, and any agreement between Joseph Davis and him, which operated to diminish her security or to increase her liability was a release of all obligation on her part. The right of insisting upon the personal liability of Jarman was one of the safeguards of the plaintiff's title, and, by voluntarily depriving her of that, Joseph Davis deprived himself of the right of insisting upon the liens of his mortgages upon the lands owned by her."

In *Sexton* v. *Pickett*, 24 Wis. 346, it was held that "a mortgagee who diminishes the security of a second mortgage, by releasing the mortgagor's personal liability, if he does not absolutely discharge the premises from the lien of his mortgage as in the case of a subsequent purchaser at least subordinates his lien to that of such second mortgage."

The answer of appellant to these cases is that they "cannot apply to the case at bar where there was no release of Roffy's, the mortgagor's, personal liability," and it is further contended that the law has been virtually declared otherwise by the supreme court of this state. The fact that the mortgagor was not served with summons would not, of course, relieve him from personal liability. Nor did appellant acquit him of any further liability for the indebtedness. He simply announced: "We are not asking for a deficiency judgment against him." Manifestly, he could not obtain such judgment when Roffy had not been brought within the jurisdiction of the court. [5] There is nothing in the law or in equity to compel the plaintiff to proceed against the mortgagor where he had disposed of his entire interest in the land. Respondents were interested in the matter because they were redemptioners and had the legal right to be subrogated to the claims of the senior mortgagee. But in order to discharge the lien it would be necessary for them to pay the entire debt and, therefore, they should have the benefit of any deficiency judgment that might be obtained against the mortgagor. The conduct of plaintiff did not prejudice this right. They could have had the mortgagor brought in and all the equities determined in the one proceeding. They did not choose to do so, and they cannot complain because plaintiff did not see fit to relieve them of this trouble.

Appellant also relies upon the case of *Gutzeit* v. *Pennie*, 98 Cal. 327, [33 Pac. 199]. Therein the court said: "The only question in the case at bar requiring special notice is this: 'Is a judgment foreclosing a mortgage valid as against grantees of the mortgagor and subsequent encumbrancers although a representative of the deceased mortgagor is not before the court at the time of the judgment—the plaintiff waiving all recourse against any of the property of the estate except the mortgaged premises?'" The court held that said judgment was valid as against said parties. Respondents contend that the only thing decided in that case was that the representative

of the deceased mortgagor was not a necessary party to the foreclosure. But there was virtually a waiver of all personal liability of those succeeding to the interest of the mortgagor in the land mortgaged. This would seem to affect the security and liability of the subsequent grantees and encumbrancers in the same manner as if there had been a release from liability of the mortgagor if living. In support of its position the court quotes from *Schadt* v. *Heppe,* 45 Cal. 437, and *Hibernia Sav. & L. Soc.* v. *Herbert,* 53 Cal. 378, and cites *Belloc* v. *Rogers,* 9 Cal. 124, *Goodenow* v. *Ewer,* 16 Cal. 461, [76 Am. Dec. 540], Story on Equity Pleadings; 197, and Pomeroy on Remedies, sec. 326, and notes. In the Belloc case there were two mortgages, and the junior mortgage was foreclosed first and the property purchased by the mortgagees therein. The senior mortgagee then brought suit to foreclose his mortgage, making the mortgagor and the second mortgagees parties, and he had personal service upon the mortgagor, but before judgment the mortgagor died and his administrator was made a party defendant.

The judgment was for the amount of the mortgage debt, for a sale of the premises; and in case the proceeds were not sufficient, then a judgment for the residue. The appeal was by the administrator and only from that part of the judgment ordering a sale of the premises. The case is hardly analogous to this, and in the language of the supreme court the only question for solution was "whether the facts being admitted showing the first and second mortgage, and the sale of the equity of redemption under the second mortgage, the estate of Saroni had such an interest in the premises as to render it necessary that the probate court should order the sale, upon the application of the administrator or of the plaintiff, and to oust the district court of jurisdiction to order a sale." In the course of the opinion a quotation was made, however, with approval from *Bigelow* v. *Bush,* 6 Paige (N. Y.), 345, that "the grantee of the mortgagor could not complain if the mortgagor was not made a party, for the reason that the grantee could not be injured."

*Goodenow* v. *Ewer, supra,* embraces a comprehensive consideration of the nature of a mortgage and the proceedings provided by our law for its foreclosure, and it was held that the grantee of the mortgagor was a necessary party to the suit for foreclosure in order to enforce the lien against his interest,

the court saying: "It is only when the owner of the estate—whether such owner be the mortgagor or his grantee—has had his day in court that a valid decree can pass for its sale." It was further held that the bid by the plaintiffs, being for the full amount of their judgment, satisfied it, and the effect of this satisfaction was to discharge from the lien of the mortgage the portion held by the grantee who was not made a party. It thus involved a different question from the one before us, but the court reiterated the rule as to the mortgagor not being a necessary party where he has disposed of his interest and no deficiency judgment is sought against him.

The declaration from Story is: "Where the mortgagor has conveyed his equity of redemption absolutely, the assignee only need be made a party to the bill to foreclose."

Pomeroy states: "It follows as an evident corollary from the proposition just stated, that the mortgagor who has conveyed away the whole of the mortgaged premises is no longer a *necessary* party defendant in a foreclosure action, that is, he is not indispensable to the rendition of a simple judgment of sale, if no decree for a deficiency is asked."

The decision in the 98th California thus seems to support appellant's view of the rule, but many authorities hold with Jones on Mortgages, section 727, as follows: "But if a mortgagee releases the mortgagor from personal liability, he thereby diminishes the security of a subsequent purchaser of part of the premises, and, therefore, the lien of the mortgage, so far as the rights of such subsequent purchaser are concerned, is discharged."

Respondents contend furthermore that the mortgage was satisfied as to them because plaintiff with full knowledge of their status released land of greater value than the amount due on his mortgage. He released, so it is stated, "the land of defendant Howes of the stipulated value of $1,457.20, and the land of defendant Reclamation District 1,000 by dismissing as to them, of the value of $1,085.50, and he entered into an agreement with defendant Butler that the latter would pay him one-half the amount of his mortgage independent of the result of this suit." As we understand the record, this latter amount is about $750. Thus it is claimed that plaintiff has virtually received "through his releases and agreement about $3,500, as against $2,150, paid for the mortgage." However, as to the land of the Reclamation District, it ap-

pears that a portion of the consideration at least was paid to respondents, but, we may eliminate that entirely and the principle contended for will apply, since the sum of $1,457.20 and $750, exceeds the amount paid by plaintiff for the mortgage.

The reason for this claim of respondents is that the grantee and the subsequent mortgagee of the whole or of a portion of the premises are redemptioners of the whole of the land subject to the original mortgage, and their right cannot be prejudiced by the release or sale of a portion without their consent and without applying its value to the reduction of the amount secured by the senior mortgage. In this respect, since they are subrogated to his rights, their situation is similar to that of the original mortgagor where the mortgagee has released without the former's consent. In *Woodward* v. *Brown,* 119 Cal. 292, [63 Am. St. Rep. 108, 51 Pac. 4], it is said: "We cannot perceive upon what principle of equity or by what construction of this section (sec. 726, Code Civ. Proc.) it can be held that the mortgagee may without the consent of the mortgagor, let go a part of the security to a purchaser from the mortgagor, at less than its value may be, and then look to the mortgagor to make up the deficiency. It would be a gross injustice to the mortgagor to hold him liable for a deficiency which the mortgagee has without the mortgagor's authority or consent created. The deficiency which the code directs may take the form of a personal judgment is a deficiency arising from the sale of all the mortgaged security and not a part of it."

In *Merced Sav. Bank* v. *Simon,* 141 Cal. 11, [74 Pac. 356], it was held that "where subsequent to the execution of a mortgage the mortgagor granted a right of way over the mortgaged lands to a third party, the mortgagee could not, subsequent to that deed prejudice the owner of the right of way by releases of other portions of the mortgaged premises."

In section 4841 of Elliott on Contracts the author, after stating that the second mortgagee has the right to redeem the property from the prior mortgage, says: "The second mortgagee, in such cases, stands in the place of the mortgagor, having the same rights and coming within the exception of a statute which provides that recorded mortgages 'shall not be valid against any person other than the parties thereto.' "

Many authorities sustaining this position of respondents might be cited and the principle seems to be pretty well established. The point is made, however, by appellant that there is no finding that said release of a portion of the land was not agreed to by respondents. It is clear that in order to have said release operate as a payment of the mortgage debt as to respondents, the release must have been without their consent, and unless so established it does not constitute a defense to the action. **[6]** Again, it is settled that in a foreclosure action a defense that the land has been exonerated from liability must be specially pleaded. (*Barnhart* v. *Edwards*, 5 Cal. Unrep. 558, [47 Pac. 251] ; *Cassinella* v. *Allen*, 168 Cal. 677, [144 Pac. 746].) There was no such pleading in the case.

Of course, the settled rules of pleading and practice should be observed as far as possible to promote uniformity in the administration of justice. These suggested defects may be easily remedied in case of a new trial, but as the record is presented, it is believed that the judgment should be reversed, and it is so ordered.

Buck, P. J., *pro tem.*, and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 5, 1919, and the following opinion then rendered thereon:

THE COURT.—In their petition for modification of the opinion and judgment respondents claim that we should disregard the contention of appellant that it was necessary for the defendants to plead "that the land had been exonerated from liability, and, also for the court to find that said release was not agreed to by respondents." This claim is based upon the proposition that appellant makes the contention for the first time in his closing brief. However, the contention of appellant is in response to the claim of respondents in their brief that "the mortgage was satisfied as to the contesting defendants because plaintiff released land of greater value than amount of mortgage."

The rule invoked by respondents is, therefore, hardly applicable to the case. It is true that some evidence was received on the subject without objection, and it appears that the cause was tried upon the theory that such an issue was

made. This would preclude appellant from thereafter making the objection that the matter was not pleaded. However, there is no finding upon the subject, and under the view we take of the case, the findings that are made are insufficient to support the judgment.

It is claimed by respondents, furthermore, that it was understood and virtually agreed in the court below that this case and *Richey* v. *Butler, post,* p. 314, [180 Pac. 652], relating to mortgages on the same piece of land, should be considered together, and that the evidence in both cases might be considered in the determination of each.

It is, furthermore, claimed that the evidence in the latter case sufficiently showed that the note and mortgage in this case had been paid and discharged. We have no reason to doubt the statement of counsel in this respect, but there is nothing in the record before us to show that such was the understanding, and, moreover, there is not even any contention that it was agreed that both records might be considered by this court. It would be a departure from well-established practice in appellate proceedings to permit the record to be thus modified or changed. Furthermore, there is no finding in this case that the note has been paid or the mortgage released or discharged.

We can find no authority for changing the record and modifying the judgment, as requested by respondents. If they are right in their theory, the matter can be easily adjusted in the lower court, but, in view of what is before us, we think the petition must be denied, and it is so ordered.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 5, 1919.

All the Justices concurred.