[Civ. No. 1041. Fourth Appellate District.—July 20, 1933.]

M. J. IRVING, Respondent, v. I. I. IRWIN, Appellant.

Ray M. Harris for Appellant.

Gray, Cary, Ames & Driscoll for Respondent.

TURRENTINE, J., *pro tem.*—For many years I. I. Irwin, the defendant, was in the banking business in San Diego, and since 1915 had been the confidential advisor of Mrs. Maria L. Connell in all her business transactions. During the year 1925 Mrs. Connell purchased from defendant certain bearer bonds of the Utah-Nevada Land & Livestock Company, a corporation, paying therefor the par value of $5,000, plus accrued interest. The payment of the bonds was secured by a mortgage or trust deed upon certain ranch property in Utah and Nevada. Prior to July 14, 1927, default in the payment of the interest on the bonds was made. Subsequent to the default the defendant, together with other bondholders, organized the United States Securities Corporation for the

purpose of buying the assets of the Utah-Nevada Land & Livestock Company at a proposed foreclosure sale. Defendant called Mrs. Connell by telephone a few days prior to the fourteenth day of July, 1927, and asked her to call at his bank. She went to the bank that same day where he requested her to deliver her bonds to him, orally agreeing to "guarantee" that she would lose neither principal nor interest thereon. She delivered the bonds pursuant to this request. On July 14, 1927, Mrs. Connell called on defendant and requested a writing embodying the agreement. At this second visit, and pursuant to this request, defendant executed and delivered to Mrs. Connell the following document:

"California Savings & Commercial Bank of San Diego.
"San Diego, California, July 14, 1927.
"Received from Mrs. Maria L. Connell for deposit in foreclosure: Five Thousand Dollars par value 7% Utah-Nevada Land & Livestock Co., due 1936. And I guarantee to hold said Maria L. Connell harmless from any loss of principal and interest accrued.
"I. I. IRWIN."

On conflicting evidence the trial court found and was justified in finding, that defendant at no time informed Mrs. Connell of what he proposed to do with her bonds; of the default in the payment of interest; or of the organization of the United Securities Corporation.

Early in July, 1927, the mortgage or trust deed securing the payment of the bonds was foreclosed and the assets of the Utah-Nevada Land & Livestock Company were purchased at the foreclosure sale by the United Securities Corporation. Payment therefor was made with the bonds delivered to the bondholders' committee, including Mrs. Connell's bonds, which had been delivered to the committee by defendant. The capital stock of the United Securities Corporation was then issued to the members of the pool in the proportion which the bonds furnished by them bore to the total used at the foreclosure sale. A certificate for 2,725 shares of this capital stock was issued to defendant, Mrs. Connell's bonds being included in the computation fixing this number of shares. In December, 1927, and semi-annually thereafter, to and including June, 1930, defendant, from his personal

funds paid to Mrs. Connell the interest on her bonds at the rate therein provided.

On conflicting evidence, the trial court found, and was justified in finding, that Mrs. Connell was not informed of the foreclosure; of what use was made of her bonds; of the issuance of the stock to defendant; or even of the existence of the United Securities Corporation.

On or about the twenty-fifth day of July, 1930, defendant assigned the 2,725 shares of the capital stock to the United Securities Corporation, together with his other assets, to one Howard Throckmorton, as trustee for the benefit of his creditors. On November 20, 1930, Mrs. Connell assigned to plaintiff herein, for the purpose of collection, her cause of action against defendant. The present action was instituted on November 24, 1930.

The sale price under the foreclosure proceedings adverted to was such that if Mrs. Connell had not turned in her bonds to be used in such foreclosure matter she would have received $1690. At the time this suit was instituted the total net market value of the assets of the United Securities Corporation was such that had Mrs. Connell received stock for her bonds in the regular ratio in which the stock was issued it would have amounted to $2,800, based on the total net value of the assets of the corporation.

It was stipulated that prior to the date of the delivery of the bonds by Maria L. Connell to defendant, the Utah-Nevada Land & Livestock Company defaulted in the payment of the bonds and the interest thereon and became and was insolvent from that date on and that legal action against the company other than the foreclosure proceedings referred to would have been of no avail. There was no evidence that the stock of the United Securities Corporation ever had a market, or a market value, although it was not a closed corporation. From these facts the trial court entered its judgment for plaintiff for $5,000, together with interest from June 14, 1930.

Defendant appeals and states the questions involved as follows: "1. That there is no consideration for the guaranty which is the basis of plaintiff's action. 2. That the guaranty sued on is not an unconditional guaranty but only a guaranty of collectibility. 3. That the action was prematurely brought. 4. That a number of the findings of the trial

court are not supported by substantial evidence; that a number of the findings of the trial court are not supported by any evidence; that a number of the findings of the trial court are contrary to the evidence. 5. That plaintiff's amended complaint and amendment thereto do not state a cause of action.''

Defendant's contention that there is no consideration for the guaranty must fail. One reason is that if Mrs. Connell had kept the bonds she would have received about $1690 cash from the foreclosure sale, whereas she has in fact received nothing except the agreement sued on. When she delivered the bonds to defendant she parted with all dominion and control thereover and accepted in lieu thereof the contract of defendant. Mrs. Connell having given up a valuable right in exchange for defendant's promise, suffered detriment which constitutes consideration. (Civ. Code, sec. 1605.) Conversely, the defendant obtained the right to use the bonds in a manner which he had no right prior to the delivery to him. It was thus a benefit to him which constituted a sufficient consideration. (Civ. Code, sec. 1605; *Chrisman* v. *Southern California Edison Co.,* 83 Cal. App. 249–254 [256 Pac. 618].) The rule is thus expressed in 1 Williston on Contracts, section 102a: ''Detriment . . . means giving up something which the promisee had a right to keep, or doing something which he had a right not to do. Any benefit correspondingly must mean the receiving as the exchange for his promise of something which the promisor was not previously entitled to receive. That the promisor desired it for his own advantage and had no previous right to it is enough to show that it was beneficial.''

Defendant contends that the contract is that of a guaranty of collectibility only, while plaintiff contends that it is one of absolute guaranty. Viewed as either the result is the same. If an absolute guaranty, the liability of the defendant was fixed by the failure of the principal debtor to pay when due. This was not done. If a guaranty of collectibility, the liability was incurred after the plaintiff used due and reasonable diligence to collect the debt from the principal debtor. (*Ohio Electric Car Co.* v. *Le Sage,* 182 Cal. 450 [188 Pac. 982] ; Civ. Code, sec. 2800.) The finding of the trial court that due and reasonable diligence was used by plaintiff is sustained by the stipulation that the

principal debtor was insolvent prior to its default on the bonds and at all times thereafter and that any legal action against the makers thereof, other than the foreclosure, would have been of no avail. Defendant's contention that plaintiff was required to take action against the principal debtor is thus answered: "A guaranty, such as is mentioned in the last section (Civ. Code, sec. 2800), is not discharged by an omission to take proceedings upon the principal debt, or upon any collateral security for its payment, if no part of the debt could have been collected thereby." (Civ. Code, sec. 2801.)

To defendant's contention that it was the duty of plaintiff to sue defendant to recover the stock received by him for the transfer of her bonds, we would say that the law only requires an exhaustion of remedies against the *principal debtor.* (Civ. Code, secs. 2800, 2801, 2802; *Pierce* v. *Merrill,* 128 Cal. 464, 471 [61 Pac. 64, 79 Am. St. Rep. 56].) In addition to receiving the stock, defendant converted the same, and plaintiff should not be required to pursue property which defendant has himself converted to his own use.

Defendant urges that plaintiff was required to resort to the property of the United Securities Corporation. This she could not do, even were she the owner of stock in the corporation. "The stockholders of a corporation, have no estate in the land or other property of the corporation, and the transfer by a stockholder of the stock owned by him, does not transfer any of the property of the corporation, or affect any right or obligation of the corporation in reference to the property held by it." (*Bank of Visalia* v. *Smith,* 146 Cal. 398, 403 [81 Pac. 542, 544]. See, also, *Sanchez* v. *East Contra Costa Irr. Co.,* 205 Cal. 515, 518 [271 Pac. 1060]; 6a Cal. Jur. 748 et seq.)

It follows from what we have said that the action was not prematurely brought. A careful consideration of the entire transcript leaves no doubt in our minds that the amended complaint, and amendment to the amended complaint, state facts sufficient to constitute a cause of action, and that all material findings of facts challenged by defendant find abundant support in the evidence before the trial court.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.