[Civ. No. 6055. Third Appellate District.—August 31, 1938.]

ALFRED WHITTELL, Respondent, v. HARRY J. PINNEY et al., Appellants.

Ernest C. Griffith for Appellants.

W. W. Kaye and Homer Johnstone for Respondent.

THOMPSON, J.—The defendants have appealed from a judgment of foreclosure of mortgage, which was rendered

against them. The mortgage contains a clause to the effect that it was executed to insure the mortgagee against loss on account of his purchase of certain shares in a Texas oil company. It is contended this clause creates a condition precedent to the right of foreclosure of the mortgage, and that the mortgage was rendered invalid by plaintiff's commencement of an independent action to rescind the purchase of the oil stock.

In October, 1931, the defendant, Harry J. Pinney, bought from E. S. Price for the sum of $2,000 twenty shares of stock in the E. S. Price Oil Corporation of Texas. It was represented by Price that the oil corporation was the owner of 15,000 acres of valuable oil land in Texas containing producing wells, and that its affairs were in thriving condition. The defendant, Pinney, was so enthusiastic over the prospects of the success of the company that he not only bought shares of stock for himself but he also persuaded many of his friends to purchase stock in it. He procured the sale of stock to his friends in the aggregate sum of $11,000. By means of false representations on the part of Price the plaintiff was induced to purchase 100 additional shares of the stock in that enterprise in January, 1932, for which he paid $10,000. The plaintiff then owned 120 shares of the stock. That transaction took place at San Francisco. A few days later Price notified the plaintiff that "something had happened" to his enterprise, and that Mr. Pinney was coming to San Francisco from Los Angeles to explain the situation. February 1st Mr. Pinney arrived in San Francisco, and the plaintiff then met the defendant for the first time. Mr. Pinney assured the plaintiff that the oil property was exactly as it had been represented to him by Mr. Price; that he, Pinney, owned stock in the company and that it was a "wonderful deal" and he had sold large amounts of the stock to his personal friends. He told the plaintiff that Price required $30,000 immediately with which to pay certain judgment liens existing against the corporation property; that he, Pinney, had undertaken to raise $15,000 of that amount, but was unable to do so for the reason that pending litigation against him had created a cloud upon the title to his land, and that if they were not able to raise the $15,000 at once, the company would lose its valuable property. The defendant Pinney then made the proposition to plaintiff that if he would advance to the

company $15,000 in addition to the sum of $10,000 he had already invested in stock, Pinney would give him a mortgage on his San Pedro property to secure the repayment of the first mentioned sum. The plaintiff testified in that regard:

"Mr. Pinney told me that if I would put up $15,000.00 he would give me a mortgage to secure me against loss of the principal for $15,000.00 . . . that I would have the return of my principal, which would be $15,000.00, and after that [sum was repaid] half of the dividends [on my stock] on the $25,000.00 would go to him for three years."

Subsequently Mr. Pinney changed his proposal slightly, by agreeing to give plaintiff a mortgage on his property, under the terms suggested, to secure the repayment of the principal sum of $12,000 of the $15,000 advanced, and that when plaintiff had been repaid that sum of $12,000, Pinney would be entitled to receive one-half of the dividends which were paid on plaintiff's stock for the following three years thereafter. This was agreed upon. The plaintiff then drew from his bank and paid to Price the additional sum of $15,000. In accordance with the preceding agreement, the defendant, Harry J. Pinney, executed and delivered to plaintiff his promissory note for $12,000, dated February 5, 1932, due three years from the date thereof, without interest. On the following day the defendants executed and delivered to the plaintiff the mortgage in question, containing the following clause:

"This mortgage and the note secured hereby are given and accepted upon the express condition that it shall only be paid or become payable in the following event, and then only in the manner and to the extent herein stated: The Mortgagee has purchased 120 shares of the E. S. Price Oil Company, a Texas Corporation. *This mortgage is given to assure mortgagee against loss by reason of such purchase to the extent of $12,000.* In the event the Mortgagee shall receive within three years from the date hereof $12,000, either as dividends or as proceeds from the sale of said stock, or if notwithstanding the failure to so receive such amount said stock shall be of the book value of $12,000 at any time within such three years, then this mortgage and the note secured hereby shall in any of such events become *ipso facto* null and void and shall be forthwith duly released of record and the said note cancelled; otherwise to remain in full force and effect, diminished by

amounts so received and/or the book value of the stock. It is agreed that the said 120 shares are divided into two certificates—one in Mortgagee's name and the other in the name of Harry J. Pinney. Said last named certificate shall be deposited in escrow with the Crocker First National Bank of San Francisco, endorsed in blank, under instructions that all dividends to hereafter accrue thereon shall be paid to Mortgagee up to $6,000. A credit for double the amount so received shall be made by Mortgagee upon the note secured hereby; after dividends totaling $6,000 shall be so received on such 60 shares all dividends shall be paid to Harry J. Pinney as his property up until February 6, 1935; on the 6th day of February, 1935, the said 60 shares so held in escrow shall be delivered to mortgagee or be subject to his order.

"In the event this mortgage is not satisfied, mortgagor, as a condition to its enforcement, shall be entitled to demand and receive said 120 shares."

After the execution of the mortgage the plaintiff and Mr. Pinney visited the oil fields in Texas and then discovered the fraud that had been perpetrated upon them. The plaintiff had been told by Price that the company owned 15,000 acres of good oil land; that it had two wells capable of producing oil of the value of $6,000 per day, and that it was solvent and prosperous, together with many other false statements which induced him to invest in the stock. When the plaintiff reached Texas he discovered that the company did not own 15,000 acres of land, but upon the contrary that it merely held an equitable title to 3,000 acres, which stood in the name of a trustee; that there were no active wells in operation on the premises, but only two abandoned dry holes; that there were then no derricks or active operations under way on the premises; that litigation was pending against the corporation; that it was indebted in the sum of $80,000; that it was apparently bankrupt, and that the stock was valueless.

Numerous suits were commenced in Texas against the corporation. Among other actions the plaintiff commenced a suit in Texas to cancel the stock which he had bought and to recover his purchase price thereof on the ground of fraud. That suit was not prosecuted to judgment. The defendant, Pinney, Mr. Price and a man by the name of Rankin undertook to rehabilitate the oil corporation. Pursuant to that effort, 950 additional shares of the corporation stock were

transferred, without consideration, to Mr. Pinney. The endeavor to restore the solvency of the company was a failure. Litigation and debts accumulated. Price had misappropriated the funds of the corporation, for which he was subsequently indicted. In a suit which was instituted against the corporation in Texas, a receiver was appointed who took charge of the property. All efforts to develop oil or gas on the premises failed. The stock was absolutely valueless.

The plaintiff returned to California and commenced this suit against the appellants in the Superior Court of Los Angeles County, under section 1060 of the Code of Civil Procedure, to construe the preceding clause of the mortgage with respect to the security of payment of the $12,000 purchase price of 120 shares of the corporation stock which he owned and to declare the mortgage a lien on defendant's property, described therein, for the payment of said sum. The defendants denied the material allegations of the complaint, and filed a cross-complaint praying for a cancellation of the mortgage on the ground that there was a failure of consideration for the promissory note secured thereby and a breach of contract on the part of plaintiff for the reason that he had sought to rescind the purchase of the stock and to recover the purchase price thereof, for security of which the mortgage was executed. The cause was not brought to trial until March, 1935. After the note matured, February 6, 1935, and upon default of payment thereof, by leave of court first obtained, the plaintiff filed in this suit February 14, 1935, his amended and supplemental complaint asking for foreclosure of the mortgage. Defendants answered the supplemental complaint and the cause was tried by the court sitting without a jury. Findings were adopted favorable to the plaintiff in every essential respect. A judgment of foreclosure of the mortgage was accordingly rendered. From that judgment this appeal was perfected.

The court found that the plaintiff was induced to purchase his 120 shares of stock last acquired solely because the defendant, Pinney, agreed to secure the repayment of the cost thereof to the extent of $12,000 by the execution of the note and mortgage in question; that those instruments were given to secure the repayment to plaintiff of said sum of money; that the note and mortgage were executed for a valuable consideration; that the corporation stock was ab-

solutely valueless and that no dividends were ever paid thereon; that they were sold to plaintiff by means of false pretenses on the part of Price, and by means of untrue statements made to him by Pinney regarding the oil mining enterprise which were not warranted by the information or knowledge thereof which he possessed; that the defendants defaulted in their payment of the promissory note, no part of which has been paid; that the defendants failed to demand a delivery of the 120 shares of stock, and on the contrary that plaintiff nevertheless tendered to them a valid assignment thereto together with all benefits to be derived therefrom; that the mortgage constitutes a valid lien on defendants' property described therein to secure the payment to plaintiff of the sum of $12,000 represented by the promissory note, and that the plaintiff is entitled to a judgment of foreclosure to satisfy the mortgage.

■ The foregoing facts are adequately supported by the evidence. The appellants do not contend there is a lack of evidence to support the findings except that it is asserted the note and mortgage were executed without consideration, and that the mortgage was rendered void for a breach of its terms by failure on the part of the plaintiff to assign and deliver the stock to the defendants. We are of the opinion the record discloses sufficient evidence to furnish adequate consideration for the note and mortgage. The repayment of the purchase price of the 120 shares of stock which were acquired by plaintiff was secured by the mortgage to the extent of $12,000. That sum was advanced by plaintiff at the urgent solicitation and for the partial benefit of the defendants. The plaintiff also suffered detriment thereby. Pinney was a stockholder in the corporation and he was interested in protecting the security of the stock which he had sold to his numerous friends. He promised Price to raise $15,000 with which to pay the judgment liens against the corporation property and save it from execution sales, but was unable to do so on account of litigation which was pending against him. A financial crisis existed with relation to the affairs of the corporation. Pinney told the plaintiff that unless he advanced the $15,000 the corporation property would be sold and they would all lose their investments. That was the only reason which induced the plaintiff to make the further investment of $15,000. The appellants benefited

from that transaction and the plaintiff suffered a loss thereby. Those facts furnish an adequate consideration for the execution of the note pursuant to the provisions of section 1605 of the Civil Code, which reads:

"Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

The note was not a mere agreement to indemnify the plaintiff for the loss of his money. It was an original promise to pay him $12,000 based on a sufficient consideration therefor. (*Fratessa* v. *Roffy,* 40 Cal. App. 179 [180 Pac. 830].) It has been held under similar circumstances that such transactions furnish adequate consideration for a promise to pay money. (*Vickrey* v. *Maier,* 164 Cal. 384 [129 Pac. 273]; *Fites* v. *Marsh,* 171 Cal. 487 [153 Pac. 926]; *Parker* v. *Beach,* 176 Cal. 172 [167 Pac. 871]; *Howard* v. *Galbraith,* 13 Cal. App. 373 [109 Pac. 889]; *Hudson* v. *Seeley Specialties Co.,* 19 Cal. App. 213 [124 Pac. 1051]; *McCampbell* v. *Obear,* 27 Cal. App. 97 [148 Pac. 942].)

It is not necessary that the payer shall be benefited by the transaction in order to constitute a valid consideration. It is sufficient if the payee suffers prejudice thereby. (Sec. 1605, Civ. Code; *Rusconi* v. *California Fruit Exchange,* 100 Cal. App. 750, 754 [281 Pac. 84]; *Irving* v. *Irwin,* 133 Cal. App. 374, 378 [24 Pac. (2d) 215].)

The note in question contains a direct promise to pay Alfred Whittell $12,000 on or before three years from February 5, 1932. The terms of that note are not invalidated by the provision of the mortgage above quoted. That paragraph first declares that the mortgagee purchased and is the owner of 120 shares of stock in the oil enterprise. It then says: "This mortgage is given to assure mortgagee against loss by reason of such purchase to the extent of $12,000.00." It further provides that the mortgage shall be deemed to have been satisfied, and shall become void if, (1) the mortgagee receives the $12,000 within three years from the date of the note, which is the time when it matures, either from sale of the stock or from dividends therefrom, or, (2) if the stock attains a book value of $12,000 within that period of

time. Otherwise the mortgage is to remain in full force and effect. The undisputed evidence shows, and the court found, that the plaintiff received no portion of the $12,000 during that period of time, or at all, that no dividends on the stock were ever declared or paid, and that the stock had absolutely no value. The clear terms of this disputed paragraph of the mortgage therefore indicate that the obligation represented by the note was never satisfied to any extent whatever, and that the mortgage therefore remained in full force and effect.

The balance of the challenged paragraph of the mortgage provides for a mere contingency which, under the undisputed evidence of this case, never occurred. The remaining portion of that paragraph is therefore not material to the determination of this appeal. However, it may be stated the latter portion of the paragraph merely provides that the 120 shares of oil stock shall be divided into two certificates of 60 shares each, one of which was to be deposited in escrow with the Crocker First National Bank of San Francisco in the name of Harry J. Pinney, where payments of dividends on the last-mentioned certificate were to be made. It is asserted that after dividends aggregating the full amount of $6,000 were made on the Pinney certificate "All [further] dividends [thereon] shall be paid to Harry J. Pinney as his property up until February 6, 1935"; that when the dividends paid on the 120 shares of stock aggregating the sum of $12,000 shall have been paid the mortgage would be deemed to be satisfied in full; that on February 6, 1935, the escrow terminated and the plaintiff was entitled to the return of the 60 shares of stock in Pinney's name.

This latter portion of the paragraph in question was rendered ineffectual and void for the reason that no dividends were ever paid on that stock prior to February 6, 1935, or at all. The transfer and deposit of the stock in the bank were not necessary prerequisites to the right to foreclose the mortgage under the circumstances of this case. The defendants may not complain of a failure to transfer and deposit in the bank the certificates in question for the reason that they were absolutely valueless and no dividends thereon were available or paid according to the contract or at all. The transfer of the stock under such circumstances would be useless and idle.

■ Finally the paragraph in question provides that:

"In the event this mortgage is not satisfied, mortgagor, as a condition to its enforcement, *shall be entitled* to demand and receive said 120 shares."

The evidence shows and the court found that the appellants never made a demand for the shares of stock. They are of no intrinsic value. Moreover, the court found that plaintiff tendered to the defendants an assignment and transfer of the stock together with all right and title thereto, and in pursuance of that tender the plaintiff executed and deposited with the clerk of the court where this action was pending a valid assignment of the stock to the appellants subject to their demand therefor. There is no merit in the contention that the plaintiff failed to assign or transfer to them the stock in question.

■ The plaintiff did not waive his right to foreclose his mortgage by commencing an action in Texas for the purpose of rescinding the purchase of his stock. The suit was not prosecuted to judgment. The purchase of the stock was not rescinded and the plaintiff recovered no portion of the purchase price thereof.

The judgment is affirmed.

Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 30, 1938, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 27, 1938. Houser, J., did not participate.