## COYLE VS. DAVIS and another.

*Effect of finding—Release of mortgagor's personal liability discharges lien on part of the premises sold subsequently to the mortgage—Parol agreement to release, when binding.*

1. Where a court finds that A. was a grantee of land by conveyance from B., and does *not* find that such conveyance was voluntary or fraudulent, this is equivalent to finding that A. was a purchaser in good faith and for a valuable consideration.

2. If the mortgagee has diminished the security of a subsequent purchaser of part of the mortgaged premises, without his consent, by releasing the mortgagor from his personal liability, the land so purchased is discharged from the lien of the mortgage.

3. Such discharge is not prevented by the fact that at the time the release was made, the debt was assumed by another person, to the substitution of whom for the mortgagor such subsequent purchaser did not assent.

4. Nor is it prevented by such subsequent purchaser's having a warranty deed from the mortgagor, where it appears that, in order to remove the incumbrance, he might be compelled to pay much more than the consideration money with interest—that being the limit of his damages for a breach of the covenant.

5. A parol agreement by the mortgagee to release the mortgagor from his personal liability if he will convey the lands to a third person, may be enforced by the mortgagor after performance on his part.

APPEAL from the Circuit Court for *Dodge* County.

The plaintiff sought in this action to have a certain forty acre tract to which she held title in fee, and another forty in which she claimed a right of dower, discharged from the lien of certain mortgages. These tracts are respectively the S. W. qr. of the S. W. qr. of sec. 24, and the N. W. qr. of the N. W. qr. of sec. 25, in town 10 N., R. 15 E., in said county. On the 13th of December, 1859, one Richard Jarman was, and for a long time had been, seized and possessed of said tracts, and also of the S. E. qr. of the S. E. qr. of said sec. 24; the S. W. qr. of the N. W. qr., the W. half of the S. E. qr., and the S. W. qr. of said sec. 25; and about 200 acres of other lands in the same neighborhood. On the 10th of January, 1858, a mortgage was executed upon the west half of the N. W. qr., and the S. W. qr. of the S. W. qr. of said sec. 25, to one Griffiths, for $500 with interest at 8 per cent. On said 13th day of

December, 1859, a mortgage was executed to Daniel Davis for $1,000, and one to the defendant *Joseph Davis* for $1,500, on *all* of said lands, each payable in three years, with interest at 12 per cent. On the next day another mortgage on *all* of said land was executed to one Prentiss, for $540, payable November 1st, 1860, with interest at 12 per cent. Both these mortgages were recorded the same month. On the 12th of July, 1862, said Jarman, it is alleged in the complaint, "for a good and valuable consideration, sold and conveyed to the plaintiff *Sarah Coyle* said S. W. qr. of the S. W. qr. of sec. 24, * * and on the same day sold and conveyed, for a good and valuable consideration, the said N. W. qr. of the N. W. qr. of sec. 25 to James Coyle," who was the husband of the plaintiff, and who died siezed of said tract in 1863. These deeds were recorded in September, 1862. It is further found by the court or admitted. by the pleadings, that on the 12th of July, 1864, the defendant *Joseph Davis* was the owner and holder of the mortgages above described running to Griffiths and to Prentiss, as well as of that executed to himself, while Daniel Davis continued to own the one made by him. On that day the defendant *Edward Davis* purchased the equity of redemption of *the whole* of said lands from Jarman, but *Joseph Davis* had no interest in said purchase. At the time of said purchase, it was orally agreed between Jarman, *Edward Davis* and *Joseph Davis*, that Jarman should be relieved from all personal liability to pay the amounts secured by the mortgages, and that *Joseph Davis* should rely upon *Edward Davis* and the lands described in the mortgage held by him, for the payment of the amounts secured thereby. Prior to said 12th of July, 1864, *Joseph Davis* had extended the time of payment on the mortgage to him until December 13, 1867; and on said 12th of July, he agreed to give *Edward Davis* further time of payment on all the mortgages then held by him. The court further found "that there was no connivance or understanding" (as was alleged in the

complaint) "between said *Joseph Davis* and *Edward Davis* to injure or defraud the plaintiff, nor any intention on their part, by delaying the payment and collection of said mortgages, to prejudice her rights."

The separate answers of the defendants, *inter alia*, deny that the plaintiff and her husband were purchasers in good faith and for a valuable consideration of the two forties first above mentioned, without notice of the Griffiths mortgage. The court finds "that the plaintiff and her husband, James Coyle, are subsequent grantees of portions of the mortgaged premises, which were conveyed to them by Jarman and wife by warranty deed." It is not important to state here the allegations of the complaint which are not admitted by the answers nor found to be true by the court below, as they are not passed upon by this court.

The circuit court held "that said several mortgages were valid and subsisting liens upon the land described in them respectively, excepting from the Griffiths mortgage the land granted to the plaintiff;" and that the plaintiff was not entitled to the relief asked; and it rendered judgment accordingly; from which the plaintiff appealed.

*Gill & Barber*, for the appellant, to the point that the agreement to discharge Jarman from personal liability for the mortgage indebtedness worked a satisfaction of the mortgage as to appellant's land, cited *Mathews v. Aikin*, 1 Coms., 605 ; *Niemcewicz v. Gahn*, 3 Paige, 641 ; *Averill v. Taylor*, 4 Seld., 51 ; *Haberton v. Bennett*, Beatty's Ch., 386 ; Willard's Eq., Jur., 113.

*Williams & Lovejoy*, contra, cited *Tripp v. Vincent*, 3 Barb. Ch., 613 ; *Newton v. Scott*, 9 Mees. & Wels., 434. The evidence shows that Jarman's deed to *Edward Davis* was made subject to these mortgages, and that *Edward* assumed said mortgages and covenanted to pay them. He is therefore substituted for Jarman, and is liable for any final deficiency upon said mortgages. *Marsh v. Pike*, 10 Paige, 595 ; *Halsey v. Reed*,

9 id., 446 ; *Ferris v. Crawford*, 2 Denio, 595 ; *Russell v. Pistor*, 7 N. Y., 171.   Again, the conveyances to the appellant and her husband are warranty deeds.   If the lands are taken to pay the mortgages, she has her remedy against Jarman on the covenants of warranty.

DIXON, C. J.   As to the plaintiff and her husband not having purchased in good faith and for a valuable consideration, we are of opinion that there is no evidence to support such a conclusion.   The court below found that they were grantees by conveyances from Richard Jarman and wife, but did not find that the conveyances were either fraudulent or voluntary. The effect of this finding is, that they were purchasers in good faith and for value.   Whether the judge intended so to find or not, an examination of the evidence convinces us that such ought to have been the finding.

The court also found that at the time of the conveyance of the equity of redemption by Richard Jarman to the defendant *Edward Davis*, it was verbally agreeed between Jarman and the defendants *Joseph* and *Edward Davis*, that Jarman should be released from all personal liability to pay the amounts secured by the mortgages, and that *Joseph Davis* should rely upon *Edward Davis* and the lands described therein for the payment of the same.   This finding is fully justified by the evidence, and its correctness not questioned by the counsel for the defendants.   Upon this finding we think the judgment must be reversed, and that upon the cause being remanded the plaintiff will be entitled to judgment in her favor for the relief demanded in the complaint as to the mortgages owned by the defendant *Joseph Davis*, namely, the mortgage to himself and the Griffiths and Prentiss mortgages.   The mortgage to Daniel Davis, it seems, was never owned by *Joseph*, and consequently his agreement to release the personal liability of Jarman can have no effect upon that mortgage in the hands of Daniel.

Our reasons for this opinion are the same urged by the

counsel for the plaintiff, and may be thus stated.    The plaintiff and her husband, by their purchase of a portion of the mortgaged premises, acquired the right to redeem from all the mortgages, by paying the entire mortgage debt, and then to obtain satisfaction by the foreclosure and sale of the residue of the premises, and if they proved insufficient, to resort to the personal liability of Jarman, the mortgagor.    This right of action against Jarman personally, either before or after foreclosure and sale, was or might have been a very valuable right; and after the death of her husband and before the conveyance to *Edward Davis* and the release by *Joseph*, the plaintiff was in a situation to have acquired it, both as to the land conveyed to her husband and as to that conveyed to herself.    By the release, *Joseph Davis*, with full knowledge of the facts, deprived her of this right.    He put it beyond her power to acquire it, still leaving the mortgage a burthen upon the estate in her hands.    Can he insist upon the burthen and at the same time deprive her of any material benefit or advantage incident to her obligation to discharge that burthen?    We think not.    She stands in the relation of a surety for Jarman, and any agreement between *Joseph Davis* and him, which operated to diminish her security or to increase her liability, was a release of all obligation on her part.    The right of insisting upon the personal liability of Jarman, was one of the safeguards of the plaintiff's title, and, by voluntarily depriving her of that, *Joseph Davis* deprived himself of the right of insisting upon the liens of his mortgages upon the lands owned by her.    She is accordingly entitled to have them discharged.

It is objected that the plaintiff lost nothing by the release, because she has the same remedy over against Jarman upon the covenants of his deeds to her and to her husband.    This is not so, or at least it is very doubtful.    On the covenant of warranty the measure of damages is the consideration money and interest.    In an action for the breach of the covenant against incumbrances, it has been held that the true measure of dam-

ages is the amount paid to remove the incumbrance, with interest, provided the same does not exceed the consideration money and interest. *Dimmick v. Lockwood*, 10 Wend., 142; *Foote v. Burnet*, 10 Ohio, 334. In this case the sums due upon the mortgages greatly exceeded the price or value of the lands owned by the plaintiff, and she might be obliged to pay much more than the consideration money and interest in order to remove the incumbrances.

It is furthermore objected that in place of the personal liability of Jarman, the plaintiff has that of *Edward Davis*, who took title to his part of the mortgaged premises subject to the mortgages and covenanting to pay and satisfy them. It seems almost needless for us to observe that the substitution of the personal liability of *Edward Davis* for that of Jarman, though good as between Jarman and *Joseph Davis*, is not obligatory upon the plaintiff without his consent, of which there is not the slightest evidence.

Again, it is objected that the agreement to release Jarman is void because it was not reduced to writing and signed, and because it was without consideration. Neither of these objections is well taken. The agreement, having been fully performed by Jarman according to its terms, by the conveyance to *Edward Davis* and his acceptance of the grant, is binding upon *Joseph Davis*, although resting in parol. *Joseph Davis* is as much bound to the performance as he would have been if the conveyance had been made to himself, or as he would have been to pay Jarman a sum of money agreed upon as a consideration for the conveyance. It is in effect the same as if the conveyance had been made to himself, and hence there is no want of consideration. The agreement being fully executed by Jarman, *Joseph Davis* cannot accept and enjoy the benefit of it, either by himself or his brother *Edward*, and at the same time repudiate the obligation to perform on his own part. Any loss by the promisee, as well as any gain by the promisor, constitutes a valid consideration for a promise.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to enter judgment for the plaintiff in accordance with this opinion.