[Civil No. 3575. Filed October 7, 1935.]

[49 Pac. (2d) 997.]

E. C. SEALE and CLARA L. SEALE, His Wife, Appellants, v. H. W. BERRYMAN, EDNA A. MUNGER and CHARLES P. MUNGER, Her Husband, Appellees.

Mr. Ziba O. Brown and Mr. Thos. A. Flynn, for Appellants.

Mr. Stephen B. Rayburn, for Appellees.

LOCKWOOD, C. J.—This is an appeal by E. C. Seale and Clara L. Seale, his wife, hereinafter called defendants, from a final judgment rendered against them and in favor of H. W. Berryman, as plaintiff. The facts, with perhaps one material exception, are not in dispute and may be stated as follows: On May 22, 1925, Charles E. English and his wife, who were then the owners of certain real property situate in Maricopa county, executed their promissory note for

$1,250 due three years after date in favor of C. M. Berryman, and to secure the payment thereof gave a mortgage on the property above referred to. Thereafter the Englishes, through various mesne conveyances, transferred such mortgaged property to Loto S. Daniel and his wife. The Daniels then deeded part of the mortgaged property to H. A. Telford, and the other part, being that in litigation in the present action, to defendants. Under the terms of the deed to defendants the property was subject to the mortgage, but they did not expressly assume any personal responsibility for the debt secured thereby. Telford later deeded his part of the property to Edna A. Munger. By the terms of this last-named deed the grantee therein expressly assumed and agreed to pay the full mortgage debt of $1,250. The original note was not paid when due, and C. M. Berryman having died, it was assigned by the executor of his estate to plaintiff herein some few days after it had become due. Apparently nothing further was done in regard to the matter until the 22d day of November, 1929, when plaintiff entered into an agreement with Edna Munger and Charles P. Munger, her husband, which reads as follows:

"Charles P. Munger. Extension of Mortgage, dated November 22, 1929.

"Whereas, on May 22, 1925 Ann English and Charles English, wife and husband, executed a certain promissory note for $1,250.00 to C. M. Berryman due May 22, 1928, which said note is now held by H. W. Berryman and secured by mortgage on the following described real estate, to-wit:—Beginning at a point 162.5 feet South of the Northwest corner of Lot 4 of Sunset Acres, according to the recorded plat in office of County Recorder of Maricopa County, Arizona, in Book 13 of Maps, page 3 thereof; running thence South 150 feet; thence East 135.25 feet; thence North 150 feet; thence West 135.25 feet to the place of be-

ginning, which said mortgage was recorded in the office of the County Recorder of Maricopa County, Arizona, in Book 177 of Mortgages, page 256.

"And Whereas, said promissory note has not been paid, and the said present holder of said note and mortgage agrees to extend the time of the payment thereof up to and until the 22nd day of November, 1932.

"Now therefore, in consideration of such extension, the said Edna A. Munger and husband Charles P. Munger, agree to pay said promissory note, with the specified rate of interest thereon, upon the said 22nd day of November, 1932, and if paid before such date that they will pay to the holder of said note the interest in full upon said promissory note at the rate therein specified, up to and including said 22nd day of November, 1932."

Defendants Seale were not notified of the intention of plaintiff and the Mungers to execute an extension of time for payment, as aforesaid, nor did they ever agree thereto. The note not having been paid at the expiration of the time for which it was extended, suit was brought against the original makers of the note and mortgage, and all their grantees to and including defendants Seale and the Mungers were made parties to the suit. The prayer for relief was judgment against the Englishes and the Mungers for the principal of the note with interest and costs, and a foreclosure of the lien of the mortgages against all of the subsequent grantees of the Englishes, including the defendants herein and the Mungers. The Mungers answered, admitting all the foregoing facts, but alleging that they had no interest in the mortgaged premises, since they had, prior to the institution of the suit, executed and delivered to plaintiff a quitclaim deed to their interest in the premises. Defendants Seale answered with a general denial and then set up the assumption by the Mungers of the indebtedness, the extension of time for payment, and the

transfer by the Mungers of their interest in the property to plaintiff, claiming that under such facts they were but sureties for the debt, and that the time of payment for the same had been extended without their consent. They contended that no judgment of foreclosure against the property owned by them could be granted for the reasons: (a) Since they were but sureties for the indebtedness after plaintiff had accepted the Mungers as the principal creditors, the extension of time of payment had released them; and (b) that by reason of the deed which the Mungers, then the principal debtors, had executed in favor of plaintiff, the mortgage and the title of the principal debtor being merged, the debt was extinguished.

The matter was tried to the court sitting without a jury, and judgment was rendered against the Mungers for the principal sum of the debt, and against all of the defendants, including defendants Seale, for a decree of foreclosure as to all of the property originally mortgaged by the Englishes.

The assignments of error raise in reality but one question of law, and that is whether under the foregoing facts that portion of the mortgaged property purchased by defendants Seale was released from the mortgage. It is of course the law that when A, the owner of certain property, is indebted to B and mortgages such property to B to secure an indebtedness, A cannot by any conveyances of the property, or any part thereof, to C, D or E relieve himself from the obligation of paying the indebtedness, or release any of the mortgaged property from the mortgage given to secure the indebtedness, so far as B is concerned, without the consent of the latter. This is so axiomatic that no citations are necessary to support the general statement. It is also true, however, that if A sells his interest in the property to C or D

with a contract with them that they are not merely to take the property subject to the mortgage, but are to assume the payment of the original indebtedness, that as between A and his grantees such a contract is good, the former becoming a surety for the indebtedness, and if A is later forced to pay it to B he may recover from the grantees in accordance with their contract to assume its payment. It is further the law that if, with full knowledge of the facts B accepts one of A's grantees as the debtor in place of A, such a contract is binding and B must then look to the debtor whom he has so accepted for the payment of the debt. *Holmes* v. *Bennett,* 14 Ariz. 298, 127 Pac. 753.

The real issue in this case is over the contention of defendants Seale that, when A has sold part of the mortgaged property to C and D, and only the latter assumes the payment of the original debt, C's conveyance being merely subject to the mortgage, if B accepts D as the principal debtor in place of A and grants an extension of the time of payment of the original indebtedness to D without the consent of C, such extension discharges the lien of the mortgage upon the property of C. There seems to be a singular lack of authorities on this precise question, the leading cases in support of the contention of defendants being those of *Coyle* v. *Davis,* 20 Wis. 564, and *Sexton* v. *Pickett,* 24 Wis. 346. The reasoning in the first-named case is thus stated by the court:

"The plaintiff and her husband, by their purchase of a portion of the mortgaged premises, acquired the right to redeem from all the mortgages, by paying the entire mortgage debt, and then to obtain satisfaction by the foreclosure and sale of the residue of the premises, and if they proved insufficient, to resort to the personal liability of Jarman, the mortgager. This right of action against Jarman personally, either be-

fore or after foreclosure and sale, was or might have been a very valuable right; and after the death of her husband and before the conveyance to Edward Davis and the release by Joseph, the plaintiff was in a situation to have acquired it, both as to the land conveyed to her husband and as to that conveyed to herself. By the release, Joseph Davis, with full knowledge of the facts, deprived her of this right. He put it beyond her power to acquire it, still leaving the mortgage a burthen upon the estate in her hands. Can he insist upon the burthen and at the same time deprive her of any material benefit or advantage incident to her obligation to discharge that burthen? We think not. She stands in the relation of a surety for Jarman, and any agreement between Joseph Davis and him, which operated to diminish her security or to increase her liability, was a release of all obligation on her part. The right of insisting upon the personal liability of Jarman was one of the safeguards of the plaintiff's title, and, by voluntarily depriving her of that, Joseph Davis deprived himself of the right of insisting upon the liens of his mortgages upon the lands owned by her. She is accordingly entitled to have them discharged.''

This case was approved by the Supreme Court of Wisconsin in the case of *Sexton* v. *Pickett, supra,* and is cited approvingly in Jones on Mortgages (8th ed.), § 899, but so far as has been called to our attention, the precise ruling has never been directly followed under similar circumstances by any court.

In 18 California Jurisprudence, paragraph 475, it is stated that California does not follow the Wisconsin rule, and the cases of *Davidson* v. *Roffy,* 40 Cal. App. 179, 180 Pac. 830, and *Gutzeit* v. *Pennie et al.,* 98 Cal. 327, 33 Pac. 199, are cited in support of such statement. On examining these cases, however, we find that there were no express releases of personal liability of the principal debtor on the notes involved. The facts in each case were that the principal debtor had not been served with process, so that no personal

judgment could be rendered in the action to foreclose the mortgage, and the plaintiff merely stated that such being the fact, he could not take such a judgment.

We are of the opinion that the California cases are not in point, the facts being different and the reason for the decision denying the release of the mortgage being that the personal liability had not been waived.
In the present case there can be no question that by the extension of time above set forth to the Mungers plaintiff accepted them as the principal debtors and did release all rights to a personal judgment against the Englishes. Does this release the property of defendants from the mortgage? After a careful consideration of the principle involved, we are of the opinion that the rule laid down in the Coyle case is a sound one when it is applied to the ordinary case of a purchaser under a warranty deed with no reservations therein. Such a purchaser, even though he knows of the existence of a mortgage on the property, is entitled to assume that the mortgage debtor has made or will make arrangements to clear the property from the lien of the mortgage when the debt becomes due, and if he fails to do so may have recourse against him on his general warranty. When, however, the deed expressly states that it is given *subject* to certain mortgages and encumbrances, the presumption is that the amount of those encumbrances was taken into consideration in fixing the purchase price, and as between the grantor and grantee the land, and not the grantor, is primarily responsible for the payment of the debt, and the latter may insist that *as between them* the land must be exhausted before his personal liability to the mortgagee accrues. *Pratt* v. *Buckley,* 175 Mass. 115, 55 N. E. 889. Consequently, the reason given in the Coyle case, *supra,* why the mortgage should be considered released

as to such property, to wit, that by the release of the personal liability of the grantor to the purchasers the latter have lost their right of recourse against him in case they are compelled to pay the mortgage, does not apply. We are of the opinion, therefore, that although the extension of time given by plaintiff to the Mungers did release the original mortgagors from any personal liability therefor, that it did not have the effect of releasing the mortgage on the Seale property. This disposes of the first assignment of error.

The second is that plaintiff, by accepting a deed from the Mungers to the mortgaged property which they owned, merged the mortgage and the debt and it was therefore extinguished. Even if plaintiff had accepted such a deed unconditionally, it might be argued that there was but a partial merger and at most a partial extinguishment of the debt, or else that under the rule laid down in *Metcalf* v. *Phoenix Title & Trust Co.*, 33 Ariz. 13, 261 Pac. 633, 57 A. L. R. 1015, since it was to the interest of the plaintiff to keep alive the mortgage there was no merger. We think, however, we need not consider either of these two questions, for plaintiff denied accepting the deed in question except conditionally, and with the understanding that it should not be considered as a settlement of the debt, and the trial court evidently believed him.

For the foregoing reasons, the judgment of the trial court is affirmed.

McALISTER and ROSS, JJ., concur.