RIELLY, Respondent, vs. ARNSMEIER, Appellant.

*February 4—March 3, 1936.*

The cause was submitted for the appellant on the brief of *McDaniel & Olson* of Darlington, and for the respondent on that of *Boyle & Boyle* of Darlington.

MARTIN, J. The plaintiff, hereinafter referred to as respondent, brought this action for the foreclosure of a certain real-estate mortgage in the principal sum of $1,800, which mortgage and the note secured thereby he purchased from one Amelia Ayers. The defendant, A. O. Arnsmeier, hereinafter referred to as the appellant, contends that his $5,500 mortgage, to which reference will be hereinafter made, and which covers the same piece of property, constituted a prior lien.

From the findings of fact made by the trial court, it appears that on January 23, 1915, Elizabeth Kaster, William T. Kaster, her son, and Orilla Kaster, her daughter, owned the hundred twenty-acre farm covered by the mortgages in question, and that on said date they borrowed $5,500 and evidenced the debt by giving their three certain promissory notes as follows: One for $3,000 to Henry Arnsmeier, one for $1,000 to Henry McAloon, and one for $1,500 to Ann McMahon, said notes being secured by the $5,500 mortgage above mentioned. The mortgage was also signed by Viola Kaster, wife of the said William T. Kaster. It was recorded in the office of the register of deeds of La Fayette county on January 26, 1915. It ran for a period of five years.

On December 20, 1916, Elizabeth Kaster, William T. Kaster, and his wife, borrowed $1,800 from one Frank Rielly, to secure the payment of which they executed and delivered their certain promissory note and real-estate mortgage covering the same farm. This mortgage was recorded in the office of the register of deeds on January 2, 1917. The $1,800 so borrowed was used for the purpose of purchasing the interest of Orilla Kaster in the farm in question. The

deed from Orilla to her mother and brother was made and recorded at the same time as the mortgage to Frank Rielly.

On January 23, 1920, being the date when the $5,500 mortgage became due and payable, Henry Arnsmeier, Henry McAloon, and Ann McMahon executed and delivered a release and satisfaction of said mortgage and canceled and surrended the three respective promissory notes secured thereby to the respective makers, which satisfaction was recorded in the office of the register of deeds on January 30, 1920. On January 23, 1920, the said William T. Kaster, Viola, his wife, and Elizabeth Kaster, his mother, made, executed, and delivered to said Henry Arnsmeier their certain note and mortgage in the sum of $5,500 covering the identical real estate, which mortgage was recorded on January 30, 1920.

On March 18, 1920, Frank Rielly executed and delivered an assignment of his $1,800 mortgage and note secured thereby to one Amelia Ayers, who paid therefor the full sum of $1,800. This was before the maturity of the note. On February 22, 1921, Amelia Ayers assigned said note and mortgage to the respondent, Frank Rielly, Jr., who paid therefor the full sum of $1,800.

On February 20, 1929, Henry Arnsmeier assigned to the appellant, A. O. Arnsmeier, the $5,500 mortgage in question. The assignment was recorded in the office of the register of deeds on the same date. This assignment was after the maturity of the note. It appears that Henry Arnsmeier never had any personal transactions with the Kasters, mortgagors. The mortgages and releases were transferred between Henry Arnsmeier and the Kasters by Mr. Conley, a loan broker.

The trial court specifically found:

"The evidence discloses that the payment of the amount due to the said McAloon and McMahon was accepted by them as a full and complete payment and each fully and com-

pletely released and discharged said debt and it was their intention that same should be released and discharged. The evidence further discloses that the said Arnsmeier surrendered up his old note and executed a complete release and satisfaction of the mortgage and it was his intention at said time that the debt owed him was paid and satisfied."

As a conclusion of law, the trial court found:

"That the said lien of the plaintiff, Frank Rielly, Jr., is a prior and superior lien to the lien of the defendant, A. O. Arnsmeier, on the property being foreclosed in this action; that the plaintiff is entitled to judgment as demanded in the complaint."

Judgment of foreclosure and sale was accordingly entered.

Relative to the original loan, Henry Arnsmeier testified:

"It was a joint loan for the total sum of $5,500. I made three thousand of the loan, and the remaining twenty-five hundred was furnished by the other two parties. I do not remember where the papers were signed. I left the money with Mr. Pat Conley as my agent to make the loan. I received my note and mortgage when that loan was made. When I released the first mortgage I received another mortgage on that transaction. The second mortgage was delivered to me either by mail or P. H. Conley gave it to me. No part of the principal of the mortgage loan was ever paid to me. Interest has been paid down to 1931. I paid off the other two mortgagees to the original loan the difference between my three thousand and the fifty-five hundred. The original notes and mortgage were paid off and surrendered. I made no examination of the records in the register of deeds office to determine whether or not there were any other liens against this property when I released the original mortgage. At the time I made the new transaction with the Kasters when I released the first mortgage and took back the second one I did not have any consultation with the Kasters with reference to whether my mortgage was the only mortgage or not. I did not see them at that time. I never had any personal transactions with the Kasters with

reference to the loan on the second mortgage. All of the mortgages and releases were transferred between me and the Kasters by P. H. Conley, who is now dead."

Mr. William T. Kaster testified, relative to the second $5,500 mortgage:

"Q. Did you receive any other consideration for the second mortgage of $5,500 than the original money that was paid you on the first mortgage? A. You mean did I borrow any other money? No, the $5,500 was borrowed to pay off the first mortgage.

"Q. So you never received any money other than the $5,500,—except the original amount? A. That is all."

Sec. 117.37, Stats. 1933, provides:

"A negotiable instrument is discharged: . . . (5) when the principal debtor becomes the holder of the instrument at or after maturity in his own right."

We need not consider this case on any theory of the law of subrogation. Appellant's counsel make this statement in their brief:

"We hold the case at bar is not one of subrogation at all, but purely one of renewal and extension of the debt, the transaction appearing of record and being duly known by the agent for all the parties involved in all the mortgages."

In *Rosendale State Bank v. Holland,* 195 Wis. 131, 217 N. W. 645, the court said:

"It is the long and well settled doctrine in this state that a renewal by the giving of a new note or the extension of time in which to pay a pre-existing debt is not a discharge of the old and original obligation and the creation of a new obligation, but a mere carrying on of the prior obligation, *unless and except it appears that the parties agreed that it should be a destruction of the old and the creation of a new obligation."* Citing *Wisconsin Trust Co. v. Cousins,* 172 Wis. 486, 503, 179 N. W. 801.

In the instant case the trial court found that it was the intention of all the parties to the original $5,500 notes and

mortgage that the indebtedness evidenced thereby be discharged. This finding is fully sustained by the evidence. The facts here will not permit of the application of the rule contended for by appellant's counsel. The original debt was due and owing to three different persons. Each held his separate note secured by a single, joint mortgage. We must assume that at least two of the parties, McAloon and McMahon, insisted that their notes be paid at maturity on January 23, 1920. Mr. Arnsmeier had no control over the indebtedness due to McAloon and McMahon. He had no authority to enter into any agreement with the Kasters as to a renewal or an extension for the time of payment. He testified: "The original notes and mortgage were paid off and surrendered." Mr. Arnsmeier, individually, made a new loan in the sum of $5,500 at a lower rate of interest to two of the parties involved in the original loan. That is, Orilla Kaster was not a party to the new loan. William T. Kaster testified that they borrowed the last $5,500 to pay off the first mortgage. Under the exception to the rule as stated in the *Rosendale Bank Case, supra,* and the admitted facts, we must hold that the loan of January 23, 1920, made by Henry Arnsmeier, was a new loan.

The respondent contends that the release of Orilla Kaster from personal liability on the original notes and mortgage operates to discharge the lien of said mortgage as against the $1,800 mortgage which is being foreclosed in this action. In *Sexton v. Pickett,* 24 Wis. 346, the trial court found "among other things, . . . the fact as to the discharge of the personal liability of the Austins to be as alleged, and held that the plaintiffs, as subsequent mortgagees, had a right to redeem the land from the Pickett mortgage, and thereupon would have been entitled to be subrogated to all the rights of the first mortgagee, including the right of a personal judgment against the Austins; that, by the dis-

charge of the latter from their personal liability, plaintiff's security was, therefore, diminished, without their consent, and that, as against them, the lien of the first mortgage was, therefore, discharged." At page 349 the court said:

"The facts, as found by the circuit judge, sustain his conclusions of law. The material question presented was substantially the same as that decided by this court in *Coyle v. Davis*, 20 Wis. * 564, where it was held that a mortgagee, by diminishing the security of a subsequent purchaser of part of the premises, by releasing the mortgagor's personal liability, discharged the lien of the mortgage so far as the rights of such subsequent purchaser were concerned. Here the plaintiffs were subsequent mortgagees, instead of absolute purchasers; but this makes no difference in the application of the principle, though it might in some cases merely give the second mortgagee priority over the first, instead of discharging the premises entirely from the lien of the first, as in the case of an absolute purchaser."

See Jones, Mortgages (8th ed.), § 899, in which the author states the rule as above and cites *Coyle v. Davis, supra,* and *Sexton v. Pickett, supra;* and also see annotation, 63 A. L. R. 1520.

When Amelia Ayers purchased the mortgage under foreclosure in this action, on March 18, 1920, and when she assigned the note and mortgage to the plaintiff, on February 22, 1921, the records in the office of the register of deeds disclosed it was a first-lien mortgage. The record is barren of any evidence that Mr. Conley, as the agent of Henry Arnsmeier or of the Kasters, ever acted as agent for the respondent in his purchase of the note and mortgage from Amelia Ayers or as her agent when she purchased said note and mortgage on March 18, 1920. Both had a right to rely upon the condition of the title of the mortgaged premises as disclosed by the record in the office of the register of deeds. All persons dealing with land are charged with knowledge of the contents of any instrument recorded at length. When the plaintiff purchased the note and mortgage from Amelia

Ayers, the records disclosed a full release and satisfaction of the original $5,500 mortgage bearing date January 23, 1915. Plaintiff had a right to rely upon the then disclosed condition of the title. *Kidder v. Pueschner,* 211 Wis. 19, 21, 247 N. W. 315.

The judgment must stand unless this court can say that the facts as found below are against the great weight and clear preponderance of the evidence. *Bauer v. Franklin State Bank,* 216 Wis. 507, 511, 257 N. W. 456, and cases there cited. The findings here are sustained by the evidence, and the trial court's conclusion of law based thereon is correct. It follows that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.