## SCRIVNER v. KANSAS CITY LIFE INS. CO.

No. 31085. Oct. 12, 1943.

Rehearing Denied Dec. 14, 1943.

*143 P. 2d 619.*

Paul & Paul, of Pauls Valley, for plaintiff in error.

W. C. Austin, of Altus, for defendant in error.

WELCH, J. Plaintiff in error was plaintiff in the trial court. He sought to establish his real estate mortgage as a first lien on the land. Upon this appeal he urges:

"First: Where mortgagee releases an existing mortgage and simultaneously takes a new mortgage, in ignorance of intervening mortgage, even though said intervening mortgage be of record, the lien of original mortgage is preserved and carried over into the new mortgage."

He cites 19 R. C. L. page 452, par. 236; 41 C. J. page 582, par. 546, and other authorities as supporting his contention in that regard.

The facts relating to that contention are: In 1916 plaintiff loaned $2,500 to his son, Crockett Scrivner, secured by mortgage on the land involved. In De-

cember, 1924, Crockett Scrivner executed a mortgage on the land securing a loan of $5,000, which was shortly thereafter assigned to defendant. Shortly thereafter plaintiff released his mortgage and at the same time took a renewal mortgage.

The plaintiff's petition indicated that it was one of his contentions that such simultaneous renewal continued his original mortgage as a first lien under the rules contained in the authorities above noted. An examination of this record shows that any such contention was clearly abandoned in the trial of the cause.

The state of the record discloses full justification for such abandonment, for it is strongly apparent therefrom that such release was obtained for the express purpose of clearing the record in order that this defendant's mortgage might be a first lien on the land and as an inducement in consummating a loan. There is evidence that the son may have represented the contrary to his father, but no evidence to connect this defendant or its assignor with such representations or with any fraud. We find no error in the action of the trial court in its conclusion and judgment in that regard.

Plaintiff next contends:

"A first mortgagee owes a duty to a junior mortgagee to not impair the security of the junior mortgagee, and where he does so impair the security of a junior mortgagee, or releases the mortgagor from personal liability, he subordinates his first lien to the lien of the second mortgagee."

His brief gives us the following as a quotation from Jones on Mortgages, vol. 1 (7th Ed.) sec. 605:

"It sometimes happens that a mortgagee may lose his position of priority, and, without intending to impair his own security, find himself in the place of a subsequent mortgagee, through want of care in dealing with the mortgaged property, . . . and if he would thus impair the security of a junior mortgagee by releasing the mortgagor from personal liability, the first mortgagee thereby postpones his own lien to that of the second mortgagee."

We find a somewhat similar statement in Jones on Mortgages vol. 1 (8th Ed.) page 1095, par. 738:

"A senior mortgagee who impairs the security of the junior mortgagee by releasing the mortgagor from his personal liability subordinates his lien to that of the second mortgage."

See, also, 41 C. J. page 584, sec. 547.

Other authorities involving the legal principles are also cited.

We need not here discuss the legal principles therein stated and announced further than to note that to make the rule applicable the action taken by the holder of the first mortgage must have resulted in depriving the holder of the second mortgage of valuable rights. In the leading case supporting the rule that a release of the mortgagor from personal liability also releases the lien of the mortgage as to the subsequent mortgage holder, that of Sexton v. Pickett, 24 Wis. 346, the court pointed out that the subsequent mortgage holder had the right under his mortgage to pay the debt secured by the prior mortgage and to then be subrogated to the right of such prior mortgagee, one of which rights was to procure a personal judgment against the mortgagor, and that the release of such personal liability deprived the junior mortgagee of that right, which was held to be of value, thus working prejudice to his mortgage and equitable rights. By reason of such prejudice the court concluded it proper to hold that the second mortgagee acquired superiority.

Bearing in mind, then, that prejudice to the rights of the inferior mortgage lienholder must always be shown, we approach plaintiff's contention in the light of the facts.

In 1935 this defendant foreclosed its $5,000 mortgage. After the commencement of that foreclosure suit, the landowner, Crockett Scrivner, desired to convey the land to this defendant in

settlement. After some considerable negotiations toward adjustment of differences between this defendant and Crockett Scrivner it was specifically agreed between them alone that the foreclosure action would be carried forward to completion and in anticipation of the purchase of the land at sheriff's sale by the plaintiff in that action (defendant here), it was agreed that the land would then be deeded to the landowner's son, who would execute a new $5,000 mortgage thereon to this defendant. Crockett Scrivner was to pay some $1,800 cash to this defendant, and to pay court costs and part of plaintiff's attorney's fee in that action. Any remaining deficiency judgment against Crockett Scrivner was to be released. Such agreement between those parties was fully consummated.

There seems to be little dispute but that the above action was taken with the intent to free the land of this plaintiff's junior mortgage (and other junior mortgages), and with the idea that the landowner would be better able to prevent default in the debt to this defendant.

This plaintiff does not deny that he was duly served with summons in the foreclosure action and this record leaves little doubt that he intrusted his defense to his son, Crockett Scrivner, who procured answer to be filed for the father in that action.

The trial court in this case re-established plaintiff's mortgage as a second mortgage on the land and the landowner, or owners defendants, make no complaint nor is complaint made with reference thereto by defendant in error, Insurance Company.

In this opinion we shall assume, without deciding, that the foreclosure proceeding was ineffective to take from this plaintiff any rights which he had prior thereto, and treat the agreement, acts, and foreclosure proceedings as mere private transactions between those parties without the knowledge or consent of this plaintiff.

We examine this record in vain for a showing of prejudice to this plaintiff's rights to which he has not been fully restored by the judgment of the trial court as the same is now entered.

Prior to the agreement and foreclosure proceeding and the action taken in that regard, this plaintiff held the inferior mortgage; had he desired or been compelled to exercise his right to pay the prior existing mortgage debt he would have been compelled to pay a greater amount than required by him after the transaction was completed. He would be compelled now to pay less in the exercise of such right than if the transaction had not been made, and the landowner had not made the payments required of him. The fact that a certain amount of deficiency judgment was released against Crockett Scrivner does not alter the matter. The amount so released was not added to the present mortgage lien. Any forgiveness of a part of the prior mortgage debt resulting in decreasing the amount of the present mortgage debt results in enhancing the security of this plaintiff's junior mortgage rather than an impairment thereof.

For the reasons shown, the principle relied upon in plaintiff's second contention above stated has no application herein.

The judgment of the trial court is affirmed.

CORN, C. J., GIBSON, V. C. J., and RILEY, HURST, and DAVISON, JJ., concur. OSBORN, BAYLESS, and ARNOLD, JJ., absent.