[No. 35266.   Department One.   October 27, 1960.]

J. M. DeBlasio, *Respondent*, v. Town of Kittitas, *Appellant*, United States Fidelity and Guaranty Company, *Additional Respondent*.[1]

*Edward A. Dawson* and *Velikanje & Moore*, for appellant.

*Copass & Franklin*, for respondents.

[1]Reported in 356 P. (2d) 606.

DONWORTH, J.—This action arose out of a contract between the town of Kittitas (appellant) and J. M. DeBlasio (respondent), whereby the latter agreed to construct certain trunk and lateral sewers.

The contract was executed January 9, 1950, and the work was completed July 5, 1950. Appellant had then paid respondent, on monthly estimates signed by appellant's engineer, all of the contract price except fifteen per cent thereof (being the statutory retained percentage), amounting to $4,157.15. About three months later, respondent demanded payment of this amount, but appellant failed to release the retained percentage, claiming incomplete or faulty workmanship in the sewer installation.

Between 1951 and 1954 respondent, at appellant's request, attempted certain repairs and uncovered portions of the sewer system for inspection by appellant's engineers. The parties never were able to come to any final agreement as to their differences and, on January 9, 1956 (five and a half years after completion of the original work), this action was commenced.

In his complaint, respondent sought to recover the $4,157.15 retained percentage (which admittedly has never been paid) and $1,229.18 for additional work performed at the instance of appellant in 1951, 1952, and 1954.

Appellant's answer admitted partial performance of the construction contract and the payment of the amount called for therein except the retained percentage. The answer contained a cross-complaint in which appellant sought recovery from respondent and the corporate surety on its performance bond

". . . in the sum of $28,755.92, plus the sum of $6,325.00 engineering fees and costs, plus such legal expense and costs, and reasonable attorneys' fees, as may be shown by this defendant as resulting from plaintiff's said abandonment, refusal and failure, and the bringing of this action, plus defendant's court costs herein incurred, and such other and further relief as to the Court may seem proper."

Appellant furnished a bill of particulars specifying the nature of respondent's allegedly defective workmanship and

the respects in which the operation of the sewer system was improper, incomplete, and defective. The principal complaint was the alleged failure of the system to prevent the excessive infiltration of ground water, with the result that appellant's sewage treatment plant was unable to perform its function.

Parenthetically, it should be stated that respondent did not have anything to do with the construction or maintenance of the sewage treatment plant which was connected with the sewer system involved in this case. The treatment plant began operating December 26, 1950.

Respondent's reply denied the material allegations of the cross-complaint and included two affirmative defenses thereto (the statute of limitations and waiver of the alleged breach).

The corporate surety also filed an answer to appellant's cross-complaint.

On these issues the case came on for trial before the court sitting without a jury. The parties produced witnesses in support of their respective contentions. The trial lasted four days. Some thirty exhibits were admitted in evidence. The statement of facts consists of 545 pages.

At the close of the trial, the court took the matter under advisement and subsequently announced his decision in a letter to counsel for the parties, reading as follows:

" 'My holding in this case is for the plaintiff for the reasons hereafter set out.

" 'In my opinion the fact that an inspector was on this job throughout is important. The function of an inspector is to see that the standard of workmanship is acceptable. If it is not, then steps should be taken at that time to correct the situation. Apparently the inspector was satisfied as the work went along and this, coupled with the fact that the engineer's estimates were submitted to the defendant and paid, indicates to me that at the time the standard of workmanship was acceptable.

" 'The plaintiff returned to the job several times to perform further work. In my opinion this work was within the scope of the original contract. At the time the additional work was done there was no discussion of cost and apparently the plaintiff performed this work expecting to receive

the 15% which had been withheld and no more. The plaintiff's recovery will be limited to the 15% withheld on the contract.

" 'The defendant's cross-complaint is dismissed. The reason for the repair job was to stop the excessive flow. It was shown that the repair work in so far as the pipe joints were concerned was properly done. The excessive flow was not abated. In fact, there was some evidence that it increased. Thus there was no showing that poor workmanship in the original pipe laying was responsible for the excessive flow which occasioned the repair job.

" 'In my opinion, even though poor workmanship in the original job was shown, no causal connection was established between the workmanship and the excessive flow.' "

■ Appellant sets out fourteen assignments of error. Most of the assignments relate to certain findings of fact made by the trial court or its conclusions of law, based upon the findings. Appellant argues that these findings are "unsupported" by the evidence. The issue simply is this: Is there substantial evidence in the record to support the trial court's finding that respondent had satisfactorily completed performance of the contract? The issue then is a factual one and this court has repeatedly held that factual disputes will not be retried upon appeal. See *Schutz v. Schutz,* 56 Wn. (2d) 969, 354 P. (2d) 694 (1960); *Zvolis v. Condos,* 56 Wn. (2d) 275, 352 P. (2d) 809 (1960); *Kelly v. Kelly,* 55 Wn. (2d) 494, 348 P. (2d) 652 (1960); *Stewart v. Smith,* 55 Wn. (2d) 563, 348 P. (2d) 970 (1960); *Bjorneby v. Bjorneby,* 56 Wn. (2d) 561, 354 P. (2d) 384 (1960); *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn. (2d) 570, 343 P. (2d) 183 (1959); *Wise v. Farden,* 53 Wn. (2d) 162, 332 P. (2d) 454 (1958).

To reiterate, the crux of the alleged breach of contract was the excessive infiltration of ground water into the sewer system. However, in the opinion of the trial court, appellant failed to establish a causal connection between this infiltration and the quality (or lack thereof) of respondent's work. In fact, the contract itself was silent on the matter of ground water infiltration, making it quite difficult in the first in-

stance to determine just what is meant by an "excessive flow."

The burden of proof as to the alleged breach of a contract is upon the party raising the issue as an affirmative defense, here the appellant. See *Wise v. Farden, supra,* and *Thorndike v. Hesperian Orchards, Inc., supra.* One of the acknowledged causes of the excessive infiltration of water was that the concrete bottoms of the manholes constructed by respondent were too thin. However, no evidence was offered by appellant tending to show that respondent did not follow the plans and specifications set out in the original contract between the parties concerning manhole construction—the plans and specifications having been drawn by and for appellant itself.

Furthermore, at the trial, respondent introduced proof that B. A. McAdams was appointed by the Town of Kittitas as resident engineer for the project. McAdams was charged with the duty of inspecting the construction work as it progressed. Respondent also produced evidence tending to show that McAdams periodically inspected and approved respondent's work performed under the contract. Such evidence in itself is sufficient to support the trial court's finding and conclusion that respondent satisfactorily performed the contract. Thus, we find it unnecessary to pass upon respondent's further contention that McAdams' conduct as appellant's agent constituted a waiver of the alleged breach of the contract.

In appellant's final assignment of error, it contends that the trial court erroneously refused to admit testimony concerning respondent's backfilling operations. Appellant urges that this testimony was material to the whole question of satisfactory performance of the contract. Be that as it may, respondent correctly points out in his brief that the testimony relating to the backfilling operations was, in fact, received. The trial court, however, before taking this testimony, commented that it would not consider such testimony as "proof of a defect." While the trial court may have been premature in evaluating evidence before taking it, this comment constitutes harmless error, since other substantial

evidence (referred to above) supports the court's findings.

We have also considered the assignments of error relating to the denial of post-trial motions and the entry of judgment, and find them to be without merit.

Respondent, in the concluding paragraph of his brief, asserts that the trial court should have allowed him interest on the amount of the judgment from the date of the completion of the contract (July, 1950) instead of the date when respondent filed his affidavit of compliance in December, 1955. Since respondent took no cross-appeal, this court is without jurisdiction to consider his claim of error regarding the amount of interest allowed. See Rule on Appeal 33, RCW Vol. 0.

The judgment is in all respects affirmed.

WEAVER, C. J., MALLERY, OTT, and HUNTER, JJ., concur.