[No. 3481–2.   Division Two.   August 9, 1979.]

MGIC FINANCIAL CORPORATION, *Appellant,* v. H. A.
BRIGGS COMPANY, ET AL, *Defendants,* EDDY
D. DAVIS, ET AL, *Respondents.*

*Ronald E. Cox,* for appellant.

*Samuel H. Pemberton, Jr.,* for respondents.

REED, A.C.J.—Plaintiff MGIC Financial Corporation (MGIC), the beneficiary under a deed of trust, appeals from a summary judgment in its foreclosure suit against defendants Eddy and Margaret Davis. We affirm.

On February 9, 1970, H. A. Briggs Company (Briggs) executed a promissory note to MGIC for about $1.42 million. To secure the note, Briggs and another company, Enterprise Company, executed a deed of trust which covered several parcels of land in King and Pierce Counties. MGIC also secured a personal guaranty on the note from Walter and Christine Kassuba. The note and deed of trust were recorded in both King and Pierce Counties.

On June 29, 1971, Enterprise conveyed one of the encumbered parcels, lot 5, to Eddy and Margaret Davis, for about $8,000. Although the preliminary title report disclosed MGIC's interest, there was no assumption of it by Davis.

In 1973 payments on the note became delinquent, and on December 21, 1973, the Kassubas and the two companies went into bankruptcy. On the same date, MGIC filed a lawsuit in King County against Briggs, based on the 1970 note and deed of trust, and another lawsuit in Florida, against the Kassubas, based on their personal guaranty on the note. MGIC did not join the Davises as defendants in the foreclosure action, even though it found out in January 1974 that the Davises owned lot 5.[1]

On May 31, 1974, MGIC, Briggs and the Kassubas reached a written settlement agreement. The agreement provided, in part:

(a) The Property shall be conveyed absolutely to MGIC, free and clear of all liens and encumbrances . . .

(b) Following such conveyance, MGIC shall cause all pending litigation against KASSUBA, as aforesaid, to be dismissed with prejudice.

(c) The aforesaid Deed of Trust Note (Exhibit "A") and Deed of Trust (Exhibit "B") shall be cancelled and satisfied of record and all parties shall be relieved of any further liability thereunder, whether as maker or guarantor.

In December 1974, pursuant to the May 1974 settlement agreement, *most* of the encumbered parcels were conveyed by quitclaim deed to MGIC. The parties have stipulated that the quitclaim deeds released Briggs from personal liability on the note and deed of trust. The Kassubas later were released from personal liability on August 20, 1975, when MGIC voluntarily dismissed its Florida lawsuit against them.

On April 4, 1977, more than three years after the original suit had been filed, MGIC amended its King County foreclosure complaint to join the Davises as defendants. On May 1, 1978, the trial court granted a motion for summary

---

[1] On October 15, 1974, one of MGIC Financial Corporation's attorneys wrote to the Davises advising them that their property was subject to the deed of trust, and that they "hence would be a party to our lawsuit if a foreclosure is necessary." The letter, however, did not mention that the foreclosure suit already had been filed more than 9 months before.

judgment in favor of the Davises and dismissed the complaint against them.

The purpose of a summary judgment is to avoid unnecessary trials; it is available only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Lamon v. McDonnell Douglas Corp.,* 91 Wn.2d 345, 349–50, 588 P.2d 1346 (1979); *International Ass'n of Firefighters Local 2088 v. Tukwila,* 22 Wn. App. 683, 591 P.2d 475 (1979).

The trial court based its summary judgment upon the equitable rule set out in *Coyle v. Davis,* 20 Wis. 564 (1866): Where a mortgagee has notice of a later purchaser of part of the mortgaged premises, the mortgagee's release of the mortgagor's personal liability diminishes the subrogation rights of the later purchaser and thereby operates to discharge the lien against that part of the premises sold to the later purchaser.[2]

In *Coyle,* as here, the mortgagor sold part of his mortgaged property by warranty deed to a purchaser. The mortgagor sold the remainder of the mortgaged property to a second purchaser. At the second sale the mortgagee, who knew about the first purchaser's interest, nevertheless released the mortgagor from personal liability on the note, and agreed to look only to the second purchaser and to the encumbered land to secure the note. When the mortgagee later attempted to foreclose against the first purchaser's property, the Wisconsin court barred the foreclosure, stating:

> [The first purchaser of the mortgaged property] stands in the relation of a surety for [the mortgagor], and any agreement between [the mortgagee] and [the mortgagor] which operated to diminish [the purchaser's] security or to increase her liability, was a release of all obligation on [the purchaser's] part. The right of insisting upon the

---

[2]Statutory deeds of trust have been held to be generally a species of mortgage. *Rustad Heating & Plumbing Co. v. Waldt,* 92 Wn.2d 372, 376, 588 P.2d 1153 (1979). For purposes of this decision, the equitable principles of cases dealing with mortgage foreclosures apply equally to foreclosures of deeds of trust.

personal liability of [the mortgagor] was one of the safeguards of [the purchaser's] title, and, by voluntarily depriving [the purchaser] of that, [the mortgagee] deprived himself of the right of insisting upon the liens of his mortgages upon the lands owned by [the purchaser]. [The purchaser] is accordingly entitled to have them discharged.

*Coyle v. Davis, supra* at 568. The court pointed out that the first purchaser's remedy under the covenant of warranty and the covenant against encumbrances—basically limited to the price paid for the property—would have been grossly inadequate because

the sums due upon the mortgages greatly exceed the price or value of the lands owned by [the purchaser], and she might be obliged to pay much more than the consideration money and interest in order to remove the incumbrances.

*Coyle v. Davis, supra* at 569. The *Coyle* rule was extended in *Sexton v. Pickett,* 24 Wis. 346 (1868), where the court held that a release of the mortgagor's personal liability will subordinate or even release the lien of the mortgage as to a subsequent mortgage holder. Research has failed to disclose any other case involving precisely the same factual situation as that found in *Coyle.* The basic principle underlying the *Coyle* and *Sexton* rules, however, has been stated with approval in several cases and treatises. In simplest terms the principle is that courts must protect subrogation rights of junior interest holders against prejudicial acts by senior interest holders. *See Gandrud v. Hansen,* 210 Minn. 125, 297 N.W. 730, 735 (1941); *Seale v. Berryman,* 46 Ariz. 233, 49 P.2d 997, 999–1000, 101 A.L.R. 613, 616, (1935); *Rielly v. Arnsmeier,* 220 Wis. 564, 265 N.W. 713, 715–16 (1936); *Minneapolis Inv. Co. v. National Security Inv. Co.,* 178 Minn. 50, 226 N.W. 189, 190, 63 A.L.R. 1516 (1929); 2 L. Jones, *Law of Mortgages of Real Property* § 899, at 238 n.51 (8th ed. 1928); 11 G. Thompson, *Law of Real Property* § 4779, at 507 (1958 Repl.); 5 H. Tiffany, *Real Property* § 1495, at 544 n.96 (1939); 59 C.J.S. *Mortgages* § 282, at 345 n.87 and § 276, at 339 n.21 (1949).

We agree with the equitable principle expressed by the Wisconsin court in *Coyle* and *Sexton,* and we see no reason why it should not apply here. Subrogation is an equity extending to parties who, although not personally bound to pay a debt, are compelled to do so in order to protect their property interest. *See* G. Osborne, *Mortgages,* ch. 10, § 279, at 565 (2d ed. 1970); 73 Am. Jur. 2d *Subrogation* § 3, at 600 (1974). Subrogation entitles the party paying the debt to all of the rights, priorities, liens and securities which the senior mortgagee had against the mortgagor. *See* Restatement of Security § 141 (1941); Restatement of Restitution § 162 (1937); 73 Am. Jur. 2d *Subrogation* § 106, at 665 (1974).

As subsequent purchasers, the Davises had the right to pay off the deed of trust note and be subrogated to whatever rights MGIC, the senior lienor, had against Briggs—including the right to seek a personal judgment against Briggs. MGIC has stipulated that it had notice of the Davises' interest in lot 5 when it released Briggs from personal liability on the note. There is no question that the Davises did not consent to the release, and that the release deprived the Davises of their equitable right to pay off the debt and seek a personal judgment against Briggs. Moreover, interest accrued on the outstanding principal at an annual rate of 16 percent for 39 months while MGIC delayed in joining the Davises as defendants. We hold that this situation caused sufficient prejudice to the Davises' equitable rights to discharge the lien against their property under the *Coyle* rule.[3]

---

[3]Although technically the Davises' statutory warranty deed provided them with a remedy through the covenant against encumbrances, the remedy would have been inadequate in this case. The remedy for breach of the covenant against encumbrances is limited to the price paid for the property, plus interest. 7 G. Thompson, *Law of Real Property* § 3187, at 318–19 (1962 Repl.); 6 R. Powell, *Law of Real Property* § 907 (1979). The maximum recovery would have been dwarfed by the sum the Davises would have had to pay to clear the lien of the deed of trust from their title.

This holding follows the spirit of the general rule of suretyship: Where a secured creditor surrenders to the debtor, negligently loses or damages the security, it discharges the surety to the extent of the value so lost. *See American Law of Property* § 16.141, at 332 n.22 (1952); Restatement of Security § 132 (1941); H. Arant, *Law of Suretyship and Guaranty* §§ 62, 63, at 219 (1931). It also comports with the rule that the release of a principal, without consent of the surety, generally releases the surety. *See* Restatement of Security § 122 (1941). Washington implicitly adopted these basic principles in *Insley v. Webb,* 122 Wash. 98, 209 P. 1093, 41 A.L.R. 274 (1922), in which the principal debtor, an assuming grantee, had been released by the mortgagee from liability on a deficiency judgment. The court held that the release also absolved the mortgagor, who was a surety. The court stated at page 103:

> An examination of many cases and authorities convinces us that the very great weight of authority supports the view that the release given by the [mortgagee] to [the grantee/principal] had the effect of discharging the [mortgagor/surety] from further liability on the deficiency judgment.

*See also Corkrell v. Poe,* 100 Wash. 625, 628, 171 P. 522, 12 A.L.R. 1524 (1918); 2 L. Jones, *Law of Mortgages of Real Property,* § 742 (8th ed. 1928).

When MGIC took title to Briggs' property and released Briggs from personal liability pursuant to the May 1974 agreement, it in effect did the same thing that the mortgagee in *Insley* had done. That is, it released the principal debtor from liability on a deficiency judgment without the consent of the surety. Equity requires that the surety, the Davises, likewise be released from the burden of having to forfeit their land to satisfy a debt for which the principal debtor already has been released.

MGIC argues that the release of Briggs' personal obligation by itself causes insufficient prejudice to warrant application of the *Coyle* rule. It reasons that the Davises actually suffered no loss because they could not have paid off the

debt in the first place; and because even if they had paid the debt, they would have been subrogated to nothing more than the dubious right to seek a personal judgment against a bankrupt company. The *Coyle* and *Sexton* opinions, however, placed no minimum requirement as to the legal detriment to be incurred by the surety, and we find no such requirement in the cases or treatises which synopsize this rule. It is sufficient that there was a release, without which the Davises could have paid off the note and been subrogated to whatever rights MGIC had against Briggs' personal liability in federal bankruptcy court. MGIC bases its argument upon *Scrivner v. Kansas City Life Ins. Co.,* 143 P.2d 619 (Okla. 1943). Contrary to MGIC's assertions, the *Scrivner* court did acknowledge the rule that a surety will prevail where the mortgagee releases the mortgagor's personal liability; the court found no occasion either to apply or reject the rule, however, because under the particular facts of the case, the junior interest holder had not lost even his subrogation rights. *Scrivner v. Kansas City Life Ins. Co., supra* at 621.

In another assignment of error, MGIC argues that the trial court violated the "law of the case doctrine" by granting the motion for summary judgment several days after another trial judge had denied a similar motion. The law of the case doctrine generally applies only to parties who raise identical issues on successive appeals of the same case. *Greene v. Rothschild,* 68 Wn.2d 1, 10, 402 P.2d 356 (1965), 414 P.2d 1013 (1966); *Pierce County v. Desart,* 9 Wn. App. 760, 761 n.1, 515 P.2d 550 (1973). MGIC presents no relevant authority for extending the doctrine to apply to motions raised several times at the trial court level. We see no reason to extend the doctrine here.[4]

---

[4]The first trial judge denied the earlier summary judgment motion "without prejudice," and reserved the right to require an additional pretrial conference, stating that "this case may be determined on the issues presented by the cases mentioned herein [*i.e., Coyle v. Davis,* 20 Wis. 564 (1866) and its related cases]." Several days later MGIC Financial Corporation paved the way for the second

Both parties have requested attorney's fees. In the absence of contract, statute or recognized ground of equity, courts are without power to award attorney's fees as part of the costs of litigation. *Hsu Ying Li v. Tang,* 87 Wn.2d 796, 797–80, 557 P.2d 342 (1976); *Ritchie v. Markley,* 23 Wn. App. 569, 597 P.2d 449 (1979). MGIC bases its claim on the attorney fee provision of the 1970 deed of trust note. That provision does not bind the Davises to pay attorney fees because they neither signed the note nor assumed its obligations when they took their property by statutory warranty deed. As for the Davises' claim for attorney's fees, the court lacks jurisdiction to consider the question because the Davises have failed to file a notice of appeal. RAP 5.1, 5.2; *Simpson Timber Co. v. Aetna Cas. & Sur. Co.,* 19 Wn. App. 535, 542, 576 P.2d 437 (1978); *DeBlasio v. Kittitas,* 57 Wn.2d 208, 356 P.2d 606 (1960). In any event, we find no authority for an award of attorney's fees to Davises in this case.

Having examined the record submitted, we agree with the trial court's conclusion that this case is ripe for summary judgment. It is undisputed that MGIC knew of the Davises' surety interest. Yet without the Davises' consent, MGIC garnered title to virtually all of the debtor's real estate, released the debtor's personal liability on the deed of trust note, and failed for more than 3 years to join the Davises as defendants in the foreclosure suit while interest steadily accrued on the debt. Whether by design or neglect, the net result of these omissions was decidedly one–sided in favor of MGIC. The trial court properly balanced the equities when it released the Davises from the danger of losing their land to satisfy the debt of a principal who already had been discharged of all liability.

---

summary judgment motion by stipulating that it had notice of the Davises' ownership interest in lot 5 when it released Briggs from personal liability on the 1970 note and deed of trust.

The summary judgment in favor of the Davises is affirmed.

PETRIE and SOULE, JJ., concur.

Reconsideration denied August 29, 1979.

Review denied by Supreme Court November 30, 1979.